# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SENTRY SELECT INSURANCE COMPANY | § § § | |
| vs. | § § | CIVIL ACTION NO. 5:15-cv-00890-FB |
| DROUGHT TRANSPORTATION, LLC, CRAIG R. GOECKERITZ, AND CIRCLE BAR A, INC. | § § § § | |

## AFFIDAVIT OF NATALIE NOWAK

| | |
|---|---|
| STATE OF WISCONSIN | § § |
| COUNTY OF PORTAGE | § |

Before me, the undersigned notary public, personally came and appeared Natalie Nowak, who being sworn under oath, did state the following:

1.  "My name is Natalie Nowak. I am over the age of 21 and have never been convicted of a felony or crime involving moral turpitude. I am not suffering under any mental or physical disabilities that would prevent me from making this affidavit. All of the facts recited in this affidavit are true and correct and are based on my personal knowledge. Such facts were gained in my capacity as a Claims Representative Senior with Sentry Select Insurance Company ("Sentry"), assigned to the claim for a defense and indemnity made by Drought Transportation, LLC ("Drought") to Sentry concerning a lawsuit filed by Adrian Martinez against Drought, Craig R. Goeckeritz and Circle Bar A, Inc.. That lawsuit is Cause No. 14-10-12401-DCVAJA, styled *Adrian Martinez v. Craig Reid Goeckeritz, Circle Bar A, Inc. and Drought Transportation, LLC*, 365th Judicial District Court, Dimmit County, Texas (hereinafter referred to as the "Underlying Lawsuit").

2.      As a Claims Representative Senior with Sentry, I am familiar with Sentry's records and insurance policies issued by Sentry and which are kept by Sentry in its regular course of business. In that capacity, I am familiar with the insurance policy issued by Sentry that is involved in this lawsuit.

3.      Attached as Exhibit "B" to the Appendix in Support of Sentry's Motion for Summary Judgment, is a true and correct copy of Policy No. CT788142002 issued by Sentry to Drought. This is the policy issued by Sentry involved in this lawsuit, and for which a defense and indemnity are being sought by Drought, Craig Goeckeritz, and Circle Bar A, Inc. with the Underlying Lawsuit filed by Adrian Martinez, which lawsuit is described in Paragraph 1 above of my affidavit.

4.      Attached as Exhibit "C" to the Appendix in Support of Sentry's Motion for Summary Judgment, is a true and correct copy of the lawsuit filed by Adrian Martinez in the Underlying Lawsuit. This is the petition by which Sentry has been requested to provide a defense.

FURTHER AFFIANT SAYETH NOT."

_____
Natalie Nowak

SUBSCRIBED AND SWORN TO BEFORE ME, on this 3rd day of November, 2015, to certify which witness my hand and seal of office.

_____
Notary Public in and for
the State of Wisconsin

My commission expires:

August 31, 2019

_____
Printed Name of Notary

Kathleen M. Hintz

EXHIBIT B

This policy has been prepared for:

Drought Transportation Inc
P O Box 567
Uvalde, TX 78802

CT788142002

The policy provisions with the declarations page and endorsements, if any, issued to form a part thereof, completes this policy.

In Witness Whereof, we have caused this policy to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_____
Kenneth J. Erler
Secretary

_____
Scott Miller
President


**SENTRY.** INSURANCE

Sentry Select Insurance Company
Transportation Division
PO Box 8036
Stevens Point, WI 54481-8036
1-800-558-9257

**75-1008 07 11**
CT788142
Sentry Select Insurance Company
00001 0000000001 14143 0 N                    7D8E06F2-EAF6-4266-8B49-E6FAE68F0715

**Page 1 of 1**
05/23/2014
**394**

# IMPORTANT  NOTICE

# What You Should Know About Our Protection of Your Privacy



**SENTRY**®
INSURANCE

Protecting the personal information of the individuals we serve is a priority for Sentry Insurance. We collect, retain and use personal information about individuals for the purpose of serving their insurance needs and providing services to them.

This notice describes how we handle personal information of the individuals we serve. It is only for your information. No action on your part is needed.

If you have questions regarding this notice, please write to Corporate Compliance/Privacy, 1800 North Point Drive, Stevens Point, WI 54481.

## What kinds of information are collected and disclosed?

The types of information we may collect about you include:

- Information you provide on applications or other forms, or in your verbal responses to our questions. This may include identifying information such as name, address and information about your assets and income.
- Information about your transactions with us including policies purchased and premium payment history.
- Information we receive from a consumer reporting agency that indicates your credit worthiness and credit history.

We do not sell customer lists or any personal information regarding our customers.

We only disclose nonpublic personal information about customers or former customers to other affiliated or nonaffiliated third parties as permitted or required by law. We may share personal financial information about you between affiliated companies within the Sentry Insurance Group in order to make additional services available to you (e.g. auto insurance customers may receive information about life insurance products, and vice versa).

For those clients of Point Insurance Agency, LLC and/or the Parker Stevens agencies, these agencies may disclose your nonpublic personal information to nonaffiliated insurance companies as reasonably necessary to provide you with insurance products and services.

## How do we safeguard your privacy?

- We maintain physical, electronic and procedural safeguards to protect your personal financial information.
- We restrict access to nonpublic personal financial data to those employees who need to know that information in order to provide products or services to you.
- We communicate to employees in writing the importance of protecting confidential information.
- We may amend our privacy policies at any time. If we do, we will inform you in writing.

This notice applies to each of the following companies. Companies may not be licensed in all states.

Sentry Insurance a Mutual Company
Dairyland County Mutual Insurance Company of Texas
Dairyland Insurance Company
Middlesex Insurance Company
Parker Assurance Ltd.
Parker Centennial Assurance Company
Parker Services, L.L.C.

Parker Stevens Agency, L.L.C.
Parker Stevens Insurance Agency of Massachusetts, Inc.
Patriot General Insurance Company
Peak Property and Casualty Insurance Corporation
Point Insurance Agency, LLC
Sentry Casualty Company

Sentry Equity Services, Inc.
Sentry Life Insurance Company
Sentry Life Insurance Company of New York
Sentry Lloyds of Texas
Sentry Select Insurance Company
Viking Insurance Company of Wisconsin

45-8
CT788142
Sentry Select Insurance Company
1   00001 0000000001 14143 0 N          707DAB8F-327F-47C8-9629-48CE9BFF5DCC

03/13          Page 1 of 1
05/23/2014

**394**

75-1035 04 12

# IMPORTANT NOTICE

To obtain information or make a complaint:

You may call Sentry Select Insurance Company's toll-free telephone number for information or to make a complaint at:

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write the Texas Department of Insurance:

P. O. Box 149104

Austin, TX 78714-9104

FAX: (512) 475-1771

Web: http://www.tdi.texas.gov

E-Mail: ConsumerProtection@tdi.state.tx.us

**PREMIUM OR CLAIM DISPUTES:** Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

# AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de teléfono gratis de Sentry Select Insurance Company para informacion o para someter una queja al:

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

**1-800-252-3439**

Puede escribir al Departamento de Seguros de Texas:

P. O. Box 149104

Austin, TX  78714-9104

FAX: (512) 475-1771

Web: http://www.tdi.texas.gov

E-Mail: ConsumerProtection@tdi.state.tx.us

**DISPUTAS SOBRE PRIMAS O RECLAMOS:** Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

**UNA ESTE AVISO A SU POLIZA:** Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

75-1035 04 12
CT788142
Sentry Select Insurance Company
00001 0000000001 14143 0 N          1AD:====-4B65-462B-9887-670F5F0B64F7

Page 1 of 1
05/23/2014
**394**

75-1036 04 12

# IMPORTANT NOTICE TO POLICYHOLDERS - SAFETY SERVICES

As part of Sentry's insurance program, safety information and services are offered to our policyholders. These include:

1.    Consultation to aid in vehicle accident controls and liability potential.

2.    Analysis of loss data to identify and evaluate actual or potential exposures which can result in commercial motor vehicle accidents.

3.    Assistance in training supervisors, drivers, etc. to enhance accident control principles and techniques.

4.    Provide information on safety standards, codes, regulations, safety equipment and technical data.

5.    Assist in the evaluation of existing accident control programs or development of an accident control program to fit your need.

6.    Provide visual aids and training materials to supplement your accident control program.

7.    Sentry provides online safety information through our portal Sentry @ Your Service at our web site www.sentry.com. This online information includes:

    -    Industry specific solutions to common exposures;
    -    Online safety training;
    -    Weekly safety training topics; and
    -    Disaster warnings and updates.

These services will be provided upon your request at no cost to you.

Should you have interest in our Safety Services, please contact us by:
a.    Phone: 1-800-443-9655;
b.    Fax: 715-346-8015; or
c.    Mail at the address below;

    Sentry Insurance - Safety Services Department
    1800 North Point Drive
    Stevens Point, WI  54481

____    Please contact me to schedule a consultation visit.

____    Please send me educational material on the following subjects:

_____

_____

Account/Policy Number _____

Company Name _____

Address _____

City _____    State _____    Zip _____

Contact Person _____    Phone Number _____

75-1036 04 12
CT788142
Sentry Select Insurance Company
00001 0000000001 14143 0 N

B5A5D658-ACC4-4C5C-99FE-7390E2525026

Page 1 of 1
05/23/2014
394

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

---

IL 00 17 11 98
CT788142
Sentry Select Insurance Company

Copyright, Insurance Services Office, Inc., 1998

Page 1 of 1
05/23/2014

00001 0000000001 14143 0 N          5FB38CBE-2EA8-42ED-BCE4-B040CE5E6AEA

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

IL 00 21 09 08
CT788142
Sentry Select Insurance Company

© ISO Properties, Inc., 2007

Page 1 of 2
05/23/2014
394

00001 0000000001 14143 0 N        52A573C1-17DD-442A-93BE-FD82ADD08FB4

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

CT788142
Sentry Select Insurance Company
© ISO Properties, Inc., 2007
**IL 00 21 09 08**
05/23/2014

IL 85 11 04 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS SINGLE DEDUCTIBLE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

The applicable Physical Damage Coverage, Trailer Interchange Coverage **DEDUCTIBLE** provision is determined as follows:

In any one accident, the amount we pay for covered "loss" will be reduced by the application of only one deductible.   To determine the amount of this deductible for "loss", one of the following circumstances must apply:

1.  If a truck or truck tractor or a trailer(s) or semi-trailer(s) are involved in the accident and "loss" results to at least one of the vehicles, the highest deductible of the damaged vehicle will apply to the entire "loss".

2.  If a truck or truck tractor or a trailer(s) or semi-trailer(s) are involved in the accident and "loss" results to all vehicles, the highest deductible of the damaged vehicles will apply to the entire "loss".

3.  If a truck or truck tractor or a trailer(s) or semi-trailer(s) are involved in the accident, and "loss" results to only one vehicle, then that vehicle physical damage deductible will apply.

**CONDITIONS**

1.  The deductibles to be considered are those found in the applicable Coverage Form or on the Declarations or Vehicle Schedule.

2.  Deductibles not eligible for single deductible consideration are those in which the Coverage Form or a policy endorsement specifically excludes from consideration.

3.  In determining the highest deductible, the deductibles to be considered for this "loss" are only those in coverage forms written with "us".

IL 85 11 04 12
CT788142
Sentry Select Insurance Company

**Page 1 of 1**
05/23/2014

00001 0000000001 14143 0 N          8F268F04-28BC-4D8A-82EF-8FDA9D3EAA0D



**POLICY NUMBER:** CT788142002

# BUSINESS AUTO DECLARATIONS

| | |
|---|---|
| SENTRY SELECT INSURANCE COMPANY<br>A Stock Company, Stevens Point WI 54481<br>Transportation Division<br>P.O. Box 8036<br>Stevens Point, WI 54481-8036<br>1-800-558-9257 | Agency Name:<br>Associated Acceptance, Inc<br>1020 NE Loop 410<br>Suite 300<br>San Antonio, TX 78209<br>Agency No: 394 |

NOTICE: The Automobile Burglary and Theft Prevention Authority fee is payable in addition to the premium due under this policy. This fee reimburses the insurer, as permitted by 28 TAC §5.205, for the $2.00 fee per motor vehicle year required to be paid to the Automobile Burglary and Theft Prevention Authority under Texas Civil Statutes, Article 4413(37), §10, which was effective on June 6, 1991, and revised effective September 1, 2011.

## ITEM ONE

**Named Insured:**   Drought Transportation Inc
**Mailing Address:**   P O Box 567
                 Uvalde, TX 78802

**Policy Period:**   From 05/25/2014  To   05/25/2015
              at 12:01 AM Standard Time at your mailing address shown above.

**Form of Business:**   Corporation

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

**Estimated Total Premium:**          $54,405.00

**Forms and Endorsements attached to this policy:**

| | |
|---|---|
| 45-8 03 13 | Protection Of Privacy |
| CA 00 01 03 10 | Business Auto Coverage Form |
| CA 01 96 03 12 | Texas Changes |
| CA 02 43 03 01 | Texas Changes - Cancellation and Nonrenewal |
| CA 04 01 03 10 | Texas Stated Amount Insurance |
| CA 21 09 05 13 | Texas Uninsured/Underinsured Motorists Coverage |
| CA 22 64 07 08 | Texas Personal Injury Protection Endorsement |
| CA 23 84 01 06 | Exclusion Of Terrorism |
| CA 85 02 06 10 | Physical Damage Coverage - Downtime |
| CA 85 04 06 10 | Physical Damage Coverage - Extension Of Coverage |
| CA 85 15 06 10 | Truckers - Insurance For Non-Trucking Use |
| CA 85 20 06 10 | Policy Conditions - Cancellation For Unreported Drivers |
| CA 85 35 12 10 | Loss Payable Clause |
| CA 99 95 12 01 | Texas Supplementary Death Benefit |

POLICY NUMBER:   CT788142002

**Forms and Endorsements attached to this policy:  (Cont'd)**

IL 00 21 09 08            Nuclear Energy Liability Exclusion Endorsement (Broad Form)
IL 85 11 04 12            Texas Single Deductible

COUNTERSIGNED: ———————————————— BY ——————————————————————————
                                   (Date)                                      (Authorized Representative)

**Note**

Officers' facsimile signatures may be inserted here, on the policy cover or elsewhere at the company's option.



© ISO Properties, Inc., 2009                        **CA DS 03 02 13**
CT788142          Includes copyrighted material of Insurance Services Office, Inc., with its permission                05/23/2014
Sentry Select Insurance Company

POLICY NUMBER:   CT788142002

ITEM TWO



Schedule Of Coverages and Covered Autos

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form next to the name of the coverage.

| Coverages | Covered Autos | Limit | Premium | |
|---|---|---|---|---|
| Liability | 7 | $1,000,000 | $ | Included |
| Personal Injury Protection | 7 | Separately Stated in each Personal Injury Protection Endorsement Minus $ Not Applicable Deductible | $ | Included |
| Supplementary Death Benefit | 7 | Equal to the limit chosen for Medical Payments or Personal Injury Protection not to exceed $10,000 per person. | $ | Included |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | 7 | $85,000 $250 Deductible Applies to Property Damage (If Property Damage is selected) | $ | Included |
| Physical Damage Comprehensive | 7 | Actual Cash Value or Cost of Repair, Whichever is Less, Minus $1,000 Deductible For Each Covered Auto, But No Deductible Applies To Loss Caused By Fire Or Lightning. | $ | Included |
| Physical Damage Collision | 7 | Actual Cash Value or Cost of Repair, Whichever is Less, Minus $1,000 Deductible For Each Covered Auto. | $ | Included |

|  | | Estimated Total Premium* | $ | 54,405.00 |
|---|---|---|---|---|
|  | TX Automobile Burglary and Theft Prevention Authority Fee | | $ | 38.00 |

*This policy may be subject to final audit.

Change effective 09/04/2014
CA DS 03 02 13                                  © ISO Properties, Inc., 2009                              Page 3 of 5
CT788142       Includes copyrighted material of Insurance Services Office, Inc., with its permission         09/04/2014
Sentry Select Insurance Company
  7D5EFC14-49DC-4624-A7C9-1A5A74C502C9

POLICY NUMBER:   CT788142002

**ITEM THREE**

**Schedule Of Covered Autos You Own**

| Covered Auto Number: | See Schedule of Vehicles | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Town And State Where The Covered Auto Will Be Principally Garaged | | | | | | | | |
| Description (Year, Model, Trade Name, Body Type, Serial Number (S), Vehicle Identification Number (VIN)) | | | | | | | | |
| Purchased:    Original Cost New    Actual Cost New (N) Or Used (U) | $ $ | | | | | (STATED VALUE) | | |

Classification

| Radius Of Operation | Business Use s=service r=retail c=commercial | Size GVW, GCW Or Vehicle Seating Capacity | Age Group | Primary Rating Factor | | Secondary Rating Factor | Code |
|---|---|---|---|---|---|---|---|
| | | | | Liab. | Phy. Dam. | | |
| | | | | | | | |

| Except For Towing, All Physical Damage Loss Is Payable To You And The Loss Payee Named To The Right As Interests May Appear At The Time Of The Loss. | |
|---|---|

**Coverages – Premiums, Limits And Deductibles**
(Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding Item Two column applies instead.)

| Coverages | Limit | Premium |
|---|---|---|
| Liability | $ | $ |
| Personal Injury Protection | Separately Stated in each Personal Injury Protection Endorsement Minus $ Not Applicable Deductible | $ |
| Supplementary Death Benefit | Equal to the limit chosen for Medical Payments or Personal Injury Protection not to exceed $10,000 per person. | $ |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | $ | $ |
| Physical Damage Comprehensive | Stated In Item Two Minus $            Deductible | $ |
| Physical Damage Collision | Stated In Item Two Minus $            Deductible | $ |

© ISO Properties, Inc., 2009
Includes copyrighted material of Insurance Services Office, Inc., with its permission

Change effective 09/04/2014
CA DS 03 02 13
09/04/2014

POLICY NUMBER:    CT788142002

**ITEM THREE**

**Schedule Of Covered Autos You Own (Cont'd)**

**Total Premiums**

| | | |
|---|---|---|
| Liability | $ | Included |
| Personal Injury Protection | $ | Included |
| Supplementary Death Benefit | $ | Included |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | $ | Included |
| Physical Damage Comprehensive | $ | Included |
| Physical Damage Collision | $ | Included |

**ITEM FOUR**

**Schedule Of Hired Or Borrowed Covered Auto Coverage And Premiums**

Not Applicable

**ITEM FIVE**

**Schedule for Non-Ownership Liability**

Not Applicable

**ITEM SIX**

**Schedule of Reporting Basis**

Not Applicable

---

**CA DS 03 02 13**                    © ISO Properties, Inc., 2009                    **Page 5 of 5**
CT788142            Includes copyrighted material of Insurance Services Office, Inc., with its permission            05/23/2014
Sentry Select Insurance Company

# TEXAS
# UNINSURED/UNDERINSURED MOTORISTS
# REJECTION/SELECTION FORM

**UNINSURED/UNDERINSURED MOTORISTS INSURANCE**

Uninsured/Underinsured Motorists Coverage provides coverage for the named insured, occupants of a covered auto and designated persons, if any, for bodily injury and property damage caused by a negligent motorist who has no insurance or whose liability limits are not enough to pay the full amount an insured is legally entitled to recover as damages.   Uninsured/Underinsured Motorists Property Damage Coverage is subject to a $250 deductible.

Family members of the named insured are also covered if the named insured is an individual.

Please initial the line next to the option you select.

_____ I reject Uninsured/Underinsured Motorists Insurance entirely.

____βL_ I reject Uninsured/Underinsured Motorists Insurance with a coverage limit equal to the liability limit of my Business Auto or Motor Carrier policy but accept a lower coverage limit of:

| | |
|---|---|
| _ßC_ $85,000 Combined Single Limit (Minimum) | _____ $400,000 Combined Single Limit |
| _____ $100,000 Combined Single Limit | _____ $500,000 Combined Single Limit |
| _____ $125,000 Combined Single Limit | _____ $600,000 Combined Single Limit |
| _____ $150,000 Combined Single Limit | _____ $750,000 Combined Single Limit |
| _____ $200,000 Combined Single Limit | _____ $1,000,000 Combined Single Limit |
| _____ $250,000 Combined Single Limit | _____ $1,500,000 Combined Single Limit |
| _____ $300,000 Combined Single Limit | _____ $2,000,000 Combined Single Limit |
| _____ $350,000 Combined Single Limit | |

_____ I select Uninsured/Underinsured Motorists Insurance with a coverage limit equal to the liability limit of my Business Auto or Motor Carrier policy.

The coverage limit may not exceed the bodily injury and property damage limit of your Business Auto or Motor Carrier policy.

**THIS FORM DOES NOT PROVIDE COVERAGE.  READ THE POLICY FOR DETAILS.**

I understand this rejection/selection of coverage will apply to all subsequent renewals, reinstatements, and replacement policies until a change is requested by me in writing.

Drought Transportation Inc_____   CT788142_____
NAMED INSURED                                         ACCOUNT NUMBER

_____              5/23/14_____
SIGNATURE OF NAMED INSURED                            DATE

**75-1034 09 13**
CT788142
Sentry Select Insurance Company
1   00001 0000000001 14135 0 N          15827C97-5484-4D56-A4B0-0399B32EBBE8

# TEXAS
# PERSONAL INJURY PROTECTION
# REJECTION/SELECTION FORM

## PERSONAL INJURY PROTECTION

Personal Injury Protection provides coverage for the named insured and family members while occupying or when struck by any auto and occupants while occupying a covered auto. Personal Injury Protection coverage provides $2,500 per person, per accident for necessary medical expenses incurred within 3 years of an accident. Higher limit options are available. Work loss benefits are also provided subject to eighty percent of the insured's loss of income and the per person aggregate limit. Personal Injury Protection coverage is payable without regard to the fault or non-fault of the named insured or the recipient in causing or contributing to the accident, and without regard to any collateral source of medical, hospital, or wage continuation benefits.

If Personal Injury Protection Coverage is selected, a Supplementary Death Benefit equal to the limit shown for Personal Injury Protection Coverage will be available, but will not exceed $10,000 per person. Refer to your policy for the terms and conditions of this coverage.

Please initial the line next to the option you select.

_____   I reject Personal Injury Protection Coverage entirely.

INITIAL HERE ▷ _BC_   I select Personal Injury Protection Coverage at the following limit:

INITIAL HERE ▷ _BC_   $2,500
_____   $5,000
_____   $10,000
_____   $25,000
_____   $50,000
_____   $75,000
_____   $100,000

## THIS FORM DOES NOT PROVIDE COVERAGE.  READ THE POLICY FOR DETAILS.

I understand this selection/rejection of coverage will apply to all subsequent renewals, reinstatements, and replacement policies until a change is requested by me in writing.

| Drought Transportation Inc | CT788142 |
|---|---|
| NAMED INSURED | ACCOUNT NUMBER |
| _[signature]_ | 5/23/14 |
| SIGNATURE OF NAMED INSURED | DATE |

POLICY NUMBER:   CT788142002

CA 85 98 12 10

## SCHEDULE OF VEHICLES

This policy provides only the coverages for scheduled vehicles as shown below. Limits and deductibles shown in the Declarations apply, unless otherwise stated below.

Except for Towing, all Physical Damage loss is payable to you and the Loss Payee named as interests may appear at the time of the loss.

Any Undescribed non-owned trailer as shown on this schedule is covered, while attached to a covered power unit, or if not attached, any trailer in the named insureds' care, custody, or control for those coverages as listed on this schedule.

| 1 | 2007 | International | 2HSCNSBR07C366251 | Premium | $3,191.00 |
|---|---|---|---|---|---|

Stated Amount $48,000  
Business Use  Commercial  
Size Class  Extra heavy truck-tractor (> 45,000 Lbs.)  
Radius  Long Haul  

Garaging  Uvalde, TX  78802  
Class  50629   Ownership  Owned

| Coverage | Limit | Deductible |
|---|---|---|
| Liability | $1,000,000 | None |
| Personal Injury Protection | See Endorsement | Not Applicable |
| Supplementary Death Benefit | See Endorsement | Not Applicable |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | See Item Two | See Item Two |
| Physical Damage Comprehensive | Stated Amount | $1,000 |
| Physical Damage Collision | Stated Amount | $1,000 |
| Downtime | | Not Applicable |

| 2 | 2007 | International | 2HSCNSBR07C366279 | Premium | $3,144.00 |
|---|---|---|---|---|---|

Stated Amount $47,000  
Business Use  Commercial  
Size Class  Extra heavy truck-tractor (> 45,000 Lbs.)  
Radius  Long Haul  

Garaging  Uvalde, TX  78802  
Class  50629   Ownership  Owned

| Coverage | Limit | Deductible |
|---|---|---|
| Liability | $1,000,000 | None |
| Personal Injury Protection | See Endorsement | Not Applicable |
| Supplementary Death Benefit | See Endorsement | Not Applicable |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | See Item Two | See Item Two |
| Physical Damage Comprehensive | Stated Amount | $1,000 |
| Physical Damage Collision | Stated Amount | $1,000 |
| Downtime | | Not Applicable |

Loss Payable Clause  
Hondo National Bank  
702 E Main  
Uvalde, TX 78801

Change effective 09/04/2014  
CA 85 98 12 10  
CT788142  
Sentry Select Insurance Company  
 00001 0000000001 14247 0 N          F31F602A-9A44-4C7C-A641-E0A234CC6E1B

Page 1 of 8  
09/04/2014

POLICY NUMBER:   CT788142002

CA 85 98 12 10

| 3 | 2004 | Freightliner | | 1FUJA6CK74LM95618 | Premium | $3,002.00 |

Stated Amount $44,000  
Business Use   Commercial  
Size Class   Extra heavy truck-tractor (> 45,000 Lbs.)  
Radius   Long Haul  

Garaging  Uvalde, TX  78802  
Class   50629   Ownership  Owner Operator  

| Coverage | Limit | Deductible |
|---|---|---|
| Liability | $1,000,000 | None |
| Personal Injury Protection | See Endorsement | Not Applicable |
| Supplementary Death Benefit | See Endorsement | Not Applicable |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | See Item Two | See Item Two |
| Physical Damage Comprehensive | Stated Amount | $1,000 |
| Physical Damage Collision | Stated Amount | $1,000 |
| Downtime | | Not Applicable |

Loss Payable Clause  
Hondo National Bank  
702 E Main  
Uvalde, TX 78801  

| 4 | 2012 | Rea | | 3R9R4TM23CM001598 | Premium | $2,924.00 |

Stated Amount $66,000  
Business Use   Commercial  
Size Class   Trailer  
Radius   Long Haul  

Garaging  Uvalde, TX  78802  
Class   68629   Ownership  Owned  

| Coverage | Limit | Deductible |
|---|---|---|
| Liability | $1,000,000 | None |
| Personal Injury Protection | See Endorsement | Not Applicable |
| Supplementary Death Benefit | See Endorsement | Not Applicable |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | See Item Two | See Item Two |
| Physical Damage Comprehensive | Stated Amount | $1,000 |
| Physical Damage Collision | Stated Amount | $1,000 |

| 5 | 1985 | Fruehauf | | 1H4B0412FK001301 | Premium | $2,363.00 |

Stated Amount $50,000  
Business Use   Commercial  
Size Class   Semitrailer  
Radius   Long Haul  

Garaging  Uvalde, TX  78802  
Class   67629   Ownership  Owned  

| Coverage | Limit | Deductible |
|---|---|---|
| Liability | $1,000,000 | None |
| Personal Injury Protection | See Endorsement | Not Applicable |
| Supplementary Death Benefit | See Endorsement | Not Applicable |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | See Item Two | See Item Two |
| Physical Damage Comprehensive | Stated Amount | $1,000 |
| Physical Damage Collision | Stated Amount | $1,000 |

Change effective 09/04/2014  
CA 85 98 12 10  
09/04/2014  

CT788142  
Sentry Select Insurance Company

POLICY NUMBER:   CT788142002

**CA 85 98 12 10**

| 6 | 2001 | Vangard | 4EPPA41251BBA3882 | Premium | $1,944.00 |

Stated Amount $40,000
Business Use   Commercial
Size Class   Semitrailer
Radius   Long Haul

Garaging  Uvalde, TX  78802
Class   67629   Ownership  Owned

| Coverage | Limit | Deductible |
| --- | --- | --- |
| Liability | $1,000,000 | None |
| Personal Injury Protection | See Endorsement | Not Applicable |
| Supplementary Death Benefit | See Endorsement | Not Applicable |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | See Item Two | See Item Two |
| Physical Damage Comprehensive | Stated Amount | $1,000 |
| Physical Damage Collision | Stated Amount | $1,000 |

| 7 | 1999 | Heil | 5HTSN4126X7U06881 | Premium | $1,847.00 |

Stated Amount $38,000
Business Use   Commercial
Size Class   Semitrailer
Radius   Long Haul

Garaging  Uvalde, TX  78802
Class   67629   Ownership  Owned

| Coverage | Limit | Deductible |
| --- | --- | --- |
| Liability | $1,000,000 | None |
| Personal Injury Protection | See Endorsement | Not Applicable |
| Supplementary Death Benefit | See Endorsement | Not Applicable |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | See Item Two | See Item Two |
| Physical Damage Comprehensive | Stated Amount | $1,000 |
| Physical Damage Collision | Stated Amount | $1,000 |

| 8 | 2000 | Kenworth | 1XKWDR9X3YR852504 | Premium | $2,576.00 |

Stated Amount $34,000
Business Use   Commercial
Size Class   Extra heavy truck-tractor (> 45,000 Lbs.)
Radius   Long Haul

Garaging  Uvalde, TX  78802
Class   50629   Ownership  Owned

| Coverage | Limit | Deductible |
| --- | --- | --- |
| Liability | $1,000,000 | None |
| Personal Injury Protection | See Endorsement | Not Applicable |
| Supplementary Death Benefit | See Endorsement | Not Applicable |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | See Item Two | See Item Two |
| Physical Damage Comprehensive | Stated Amount | $1,000 |
| Physical Damage Collision | Stated Amount | $1,000 |
| Downtime | | Not Applicable |

**CA 85 98 12 10**
CT788142
Sentry Select Insurance Company
3   00004 0000000001 14143 0 N          1C70C99D-7D05-49BA-BF6F-2D8C1A0C7B4F

**Page 3 of 8**
05/23/2014

**394**

POLICY NUMBER:    CT788142002

**CA 85 98 12 10**

| 9 | 1993 | Heil | 1HLS5M7B3PT02511 | Premium | $2,172.00 |
|---|------|------|------------------|---------|-----------|

Stated Amount $46,000
Business Use   Commercial
Size Class     Semitrailer
Radius         Long Haul

Garaging   Uvalde, TX  78802
Class        67629     Ownership  Owned

| Coverage | Limit | Deductible |
|----------|-------|------------|
| Liability | $1,000,000 | None |
| Personal Injury Protection | See Endorsement | Not Applicable |
| Supplementary Death Benefit | See Endorsement | Not Applicable |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | See Item Two | See Item Two |
| Physical Damage Comprehensive | Stated Amount | $1,000 |
| Physical Damage Collision | Stated Amount | $1,000 |

| 10 | 1997 | Heil | HTSN4128V7T05290 | Premium | $2,172.00 |
|----|------|------|------------------|---------|-----------|

Stated Amount $46,000
Business Use   Commercial
Size Class     Semitrailer
Radius         Long Haul

Garaging   Uvalde, TX  78802
Class        67629     Ownership  Owned

| Coverage | Limit | Deductible |
|----------|-------|------------|
| Liability | $1,000,000 | None |
| Personal Injury Protection | See Endorsement | Not Applicable |
| Supplementary Death Benefit | See Endorsement | Not Applicable |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | See Item Two | See Item Two |
| Physical Damage Comprehensive | Stated Amount | $1,000 |
| Physical Damage Collision | Stated Amount | $1,000 |

| 11 | 2005 | Kenworth | 1XKWDB9X25J087285 | Premium | $2,955.00 |
|----|------|----------|-------------------|---------|-----------|

Stated Amount $43,000
Business Use   Commercial
Size Class     Extra heavy truck-tractor (> 45,000 Lbs.)
Radius         Long Haul

Garaging   Uvalde, TX  78802
Class        50629     Ownership  Owned

| Coverage | Limit | Deductible |
|----------|-------|------------|
| Liability | $1,000,000 | None |
| Personal Injury Protection | See Endorsement | Not Applicable |
| Supplementary Death Benefit | See Endorsement | Not Applicable |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | See Item Two | See Item Two |
| Physical Damage Comprehensive | Stated Amount | $1,000 |
| Physical Damage Collision | Stated Amount | $1,000 |
| Downtime | | Not Applicable |

POLICY NUMBER:   CT788142002

CA 85 98 12 10

| 12 | 2005 | Kenworth | 1XKWDB9X45J087286 | Premium | $2,955.00 |
|---|---|---|---|---|---|

Stated Amount $43,000     Garaging  Uvalde, TX  78802
Business Use  Commercial     Class  50629     Ownership  Owned
Size Class  Extra heavy truck-tractor (> 45,000 Lbs.)
Radius  Long Haul

| Coverage | Limit | Deductible |
|---|---|---|
| Liability | $1,000,000 | None |
| Personal Injury Protection | See Endorsement | Not Applicable |
| Supplementary Death Benefit | See Endorsement | Not Applicable |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | See Item Two | See Item Two |
| Physical Damage Comprehensive | Stated Amount | $1,000 |
| Physical Damage Collision | Stated Amount | $1,000 |
| Downtime | | Not Applicable |

| 13 | 2005 | Kenworth | 1XKWDB9X95J105118 | Premium | $2,955.00 |
|---|---|---|---|---|---|

Stated Amount $43,000     Garaging  Uvalde, TX  78802
Business Use  Commercial     Class  50629     Ownership  Owned
Size Class  Extra heavy truck-tractor (> 45,000 Lbs.)
Radius  Long Haul

| Coverage | Limit | Deductible |
|---|---|---|
| Liability | $1,000,000 | None |
| Personal Injury Protection | See Endorsement | Not Applicable |
| Supplementary Death Benefit | See Endorsement | Not Applicable |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | See Item Two | See Item Two |
| Physical Damage Comprehensive | Stated Amount | $1,000 |
| Physical Damage Collision | Stated Amount | $1,000 |
| Downtime | | Not Applicable |

| 14 | 1999 | Vantage | 4EPPA4124XBBA2523 | Premium | $2,294.00 |
|---|---|---|---|---|---|

Stated Amount $51,000     Garaging  Uvalde, TX  78802
Business Use  Commercial     Class  67629     Ownership  Owned
Size Class  Semitrailer
Radius  Long Haul

| Coverage | Limit | Deductible |
|---|---|---|
| Liability | $1,000,000 | None |
| Personal Injury Protection | See Endorsement | Not Applicable |
| Supplementary Death Benefit | See Endorsement | Not Applicable |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | See Item Two | See Item Two |
| Physical Damage Comprehensive | Stated Amount | $1,000 |
| Physical Damage Collision | Stated Amount | $1,000 |

CA 85 98 12 10
CT788142
Sentry Select Insurance Company
00004 0000000001 14143 0 N    1C70C99D-7D05-49BA-BF6F-2D8C1A0C7B4F

Page 5 of 8
05/23/2014

394

POLICY NUMBER:   CT788142002

**CA 85 98 12 10**

| 15 | 1998 | Peterbilt | 1XP5DB9X5WD464407 | Premium | $2,576.00 |

Stated Amount $34,000          Garaging  Uvalde, TX  78802
Business Use  Commercial          Class     50629     Ownership  Owned
Size Class    Extra heavy truck-tractor (> 45,000 Lbs.)
Radius        Long Haul

| Coverage | Limit | Deductible |
|---|---|---|
| Liability | $1,000,000 | None |
| Personal Injury Protection | See Endorsement | Not Applicable |
| Supplementary Death Benefit | See Endorsement | Not Applicable |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | See Item Two | See Item Two |
| Physical Damage Comprehensive | Stated Amount | $1,000 |
| Physical Damage Collision | Stated Amount | $1,000 |
| Downtime | | Not Applicable |

| 16 | 1999 | Vantage | 4EPPA4123XBBA2531 | Premium | $2,294.00 |

Stated Amount $51,000          Garaging  Uvalde, TX  78802
Business Use  Commercial          Class     67629     Ownership  Owned
Size Class    Semitrailer
Radius        Long Haul

| Coverage | Limit | Deductible |
|---|---|---|
| Liability | $1,000,000 | None |
| Personal Injury Protection | See Endorsement | Not Applicable |
| Supplementary Death Benefit | See Endorsement | Not Applicable |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | See Item Two | See Item Two |
| Physical Damage Comprehensive | Stated Amount | $1,000 |
| Physical Damage Collision | Stated Amount | $1,000 |

| 17 | 2004 | Polar | 1PMB1422145004056 | Premium | $1,944.00 |

Stated Amount $40,000          Garaging  Uvalde, TX  78802
Business Use  Commercial          Class     67629     Ownership  Owned
Size Class    Semitrailer
Radius        Long Haul

| Coverage | Limit | Deductible |
|---|---|---|
| Liability | $1,000,000 | None |
| Personal Injury Protection | See Endorsement | Not Applicable |
| Supplementary Death Benefit | See Endorsement | Not Applicable |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | See Item Two | See Item Two |
| Physical Damage Comprehensive | Stated Amount | $1,000 |
| Physical Damage Collision | Stated Amount | $1,000 |

POLICY NUMBER:    CT788142002

**CA 85 98 12 10**

| 18 | 2005 | Peterbilt | 1XP5DB9X35N861610 | Premium | $3,049.00 |
|----|------|-----------|-------------------|---------|-----------|

Stated Amount $45,000            Garaging  Uvalde, TX  78802
Business Use   Commercial        Class    50629    Ownership  Owned
Size Class     Extra heavy truck-tractor (> 45,000 Lbs.)
Radius         Long Haul

| Coverage | Limit | Deductible |
|----------|-------|------------|
| Liability | $1,000,000 | None |
| Personal Injury Protection | See Endorsement | Not Applicable |
| Supplementary Death Benefit | See Endorsement | Not Applicable |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | See Item Two | See Item Two |
| Physical Damage Comprehensive | Stated Amount | $1,000 |
| Physical Damage Collision | Stated Amount | $1,000 |
| Downtime | | Not Applicable |

| 19 | 1999 | Peterbilt | 1XP5DB9X8XD501788 | Premium | $2,721.00 |
|----|------|-----------|-------------------|---------|-----------|

Stated Amount $37,000            Garaging  Uvalde, TX  78802
Business Use   Commercial        Class    50629    Ownership  Owned
Size Class     Extra heavy truck-tractor (> 45,000 Lbs.)
Radius         Long Haul

| Coverage | Limit | Deductible |
|----------|-------|------------|
| Liability | $1,000,000 | None |
| Personal Injury Protection | See Endorsement | Not Applicable |
| Supplementary Death Benefit | See Endorsement | Not Applicable |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | See Item Two | See Item Two |
| Physical Damage Comprehensive | Stated Amount | $1,000 |
| Physical Damage Collision | Stated Amount | $1,000 |
| Downtime | | Not Applicable |

| 20 | 2001 | Peterbilt | 1XP5DB9X51D542564 | Premium | $3,144.00 |
|----|------|-----------|-------------------|---------|-----------|

Stated Amount $47,000            Garaging  Uvalde, TX  78802
Business Use   Commercial        Class    50629    Ownership
Size Class     Extra heavy truck-tractor (> 45,000 Lbs.)
Radius         Long Haul

| Coverage | Limit | Deductible |
|----------|-------|------------|
| Liability | $1,000,000 | None |
| Personal Injury Protection | See Endorsement | Not Applicable |
| Supplementary Death Benefit | See Endorsement | Not Applicable |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | See Item Two | See Item Two |
| Physical Damage Comprehensive | Stated Amount | $1,000 |
| Physical Damage Collision | Stated Amount | $1,000 |
| Downtime | | Not Applicable |

**CA 85 98 12 10**
CT788142
Sentry Select Insurance Company
00004 0000000001 14143 0 N            1C70C99D-7D05-49BA-BF6F-2D8C1A0C754F

**Page 7 of 8**
05/23/2014

**394**

POLICY NUMBER:    CT788142002

**CA 85 98 12 10**

| 21 | 1998 | Vantage | 4EPPA4129WBBA2225 | Premium | $2,221.00 |

Stated Amount $47,000
Business Use    Commercial
Size Class    Semitrailer
Radius    Long Haul

Garaging  Uvalde, TX  78802
Class     67629     Ownership

| Coverage | Limit | Deductible |
|---|---|---|
| Liability | $1,000,000 | None |
| Personal Injury Protection | See Endorsement | Not Applicable |
| Supplementary Death Benefit | See Endorsement | Not Applicable |
| Uninsured (Includes Underinsured) Motorist - Bodily Injury / Property Damage | See Item Two | See Item Two |
| Physical Damage Comprehensive | Stated Amount | $1,000 |
| Physical Damage Collision | Stated Amount | $1,000 |

**Page 8 of 8**
CT788142
Sentry Select Insurance Company

**CA 85 98 12 10**
05/23/2014

COMMERCIAL AUTO
CA 00 01 03 10

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in the quotation marks have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | | Description Of Covered Auto Designation Symbols |
|---|---|---|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have no- fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power units described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

CA 00 01 03 10
CT788142
Sentry Select Insurance Company
00006 0000000001 14143 0 N

© Insurance Services Office, Inc., 2009

54FD9E5F-5969-4C74-A4E3-739A3A4D25FF

Page 1 of 12
05/23/2014
394

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |

## B. Owned Autos You Acquire After The Policy Begins

1. If Symbols **1, 2, 3, 4, 5, 6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

## C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos

If Liability Coverage is provided by this coverage form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

## SECTION II - LIABILITY COVERAGE

### A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **Who Is An Insured**

   The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      (1) The owner or anyone else from whom you hire or borrow a covered "auto".

   This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

CT788142
Sentry Select Insurance Company

© Insurance Services Office, Inc., 2009

CA 00 01 03 10
05/23/2014

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "interest" ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

---

**CA 00 01 03 10**
CT788142
Sentry Select Insurance Company

© Insurance Services Office, Inc., 2009

**Page 3 of 12**

05/23/2014

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

**(1)** Employment by the "insured"; or

**(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the coverage form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to:

**a.** Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

**b.** The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property.

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed.

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

**(3)** When that part of the work to be done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

© Insurance Services Office, Inc., 2009

CA 00 01 03 10
05/23/2014

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

### 11. Pollution

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

(1) Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

### 12. War

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

### 13. Racing

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

## C. Limit Of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

CA 00 01 03 10
CT788142
Sentry Select Insurance Company
00006 0000000001 14143 0 N

© Insurance Services Office, Inc., 2009

54FD9E5F-5969-4C74-A4E3-739A3A4D25FF

Page 5 of 12
05/23/2014

**394**

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III - PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   **a. Comprehensive Coverage**

   From any cause except:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

   **b. Specified Causes Of Loss Coverage**

   Caused by:

   (1) Fire, lightning or explosion;

   (2) Theft;

   (3) Windstorm, hail or earthquake;

   (4) Flood;

   (5) Mischief or vandalism; or

   (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   **c. Collision Coverage**

   Caused by:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage - Hitting A Bird Or Animal - Falling Objects Or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

c. "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   **a. Transportation Expenses**

   We will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

   **b. Loss Of Use Expenses**

   For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

   (1) Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

   (2) Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

   (3) Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

   However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

### B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   **a. Nuclear Hazard**

   (1) The explosion of any weapon employing atomic fission or fusion; or

   (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

CT788142
Sentry Select Insurance Company

© Insurance Services Office, Inc., 2009

CA 00 01 03 10

05/23/2014



**b. War Or Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

3. We will not pay for "loss" due and confined to:

a. Wear and tear, freezing, mechanical or electrical breakdown.

b. Blowouts, punctures or other road damage to tires.

This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

4. We will not pay for "loss" to any of the following:

a. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

b. Any device designed or used to detect speed-measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed-measurement equipment.

c. Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

d. Any accessories used with the electronic equipment described in Paragraph **c.** above.

5. Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

a. Permanently installed in or upon the covered "auto";

b. Removable from a housing unit which is permanently installed in or upon the covered "auto";

c. An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

d. Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

6. We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit Of Insurance**

1. The most we will pay for "loss" in any one "accident" is the lesser of:

a. The actual cash value of the damaged or stolen property as of the time of the "loss"; or

b. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

2. $1,000 is the most we will pay for "loss" in any one "accident" to all electronic equipment that reproduces, receives or transmits audio, visual or data signals which, at the time of "loss", is:

a. Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

b. Removable from a permanently installed housing unit as described in Paragraph **2.a.** above or is an integral part of that equipment; or

c. An integral part of such equipment.

3. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

4. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

CA 00 01 03 10

CT788142
Sentry Select Insurance Company

© Insurance Services Office, Inc., 2009

Page 7 of 12

05/23/2014

**394**

00006 0000000001 14143 0 N          54FD9E5F-5969-4C74-A4E3-739A3A4D25FF

## SECTION IV - BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

### A. Loss Conditions

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

  **(1)** How, when and where the "accident" or "loss" occurred;

  **(2)** The "insured's" name and address; and

  **(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

  **(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

  **(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

  **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

  **(4)** Authorize us to obtain medical records or other pertinent information.

  **(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

  **(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

  **(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

  **(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

  **(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this coverage form until:

**a.** There has been full compliance with all the terms of this coverage form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this coverage form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

© Insurance Services Office, Inc., 2009

## B. General Conditions

### 1. Bankruptcy

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this coverage form.

### 2. Concealment, Misrepresentation Or Fraud

This coverage form is void in any case of fraud by you at any time as it relates to this coverage form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

a. This coverage form;

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this coverage form.

### 3. Liberalization

If we revise this coverage form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

### 4. No Benefit To Bailee - Physical Damage Coverages

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this coverage form.

### 5. Other Insurance

a. For any covered "auto" you own, this coverage form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this coverage form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this coverage form provides for the "trailer" is:

(1) Excess while it is connected to a motor vehicle you do not own.

(2) Primary while it is connected to a covered "auto" you own.

b. For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

c. Regardless of the provisions of Paragraph a. above, this coverage form's Liability Coverage is primary for any liability assumed under an "insured contract".

d. When this coverage form and any other coverage form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our coverage form bears to the total of the limits of all the coverage forms and policies covering on the same basis.

### 6. Premium Audit

a. The estimated premium for this coverage form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this coverage form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

### 7. Policy Period, Coverage Territory

Under this coverage form, we cover "accidents" and "losses" occurring:

a. During the policy period shown in the Declarations; and

b. Within the coverage territory.

The coverage territory is:

(1) The United States of America;

(2) The territories and possessions of the United States of America;

(3) Puerto Rico;

(4) Canada; and

(5) Anywhere in the world if:

(a) A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

(b) The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada or in a settlement we agree to.

---

CA 00 01 03 10
CT788142
Sentry Select Insurance Company

© Insurance Services Office, Inc., 2009

Page 9 of 12
05/23/2014

**394**

9    00006 0000000001 14143 0 N        54FD9E5F-5969-4C74-A4E3-739A3A4D25FF

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

8. **Two Or More Coverage Forms Or Policies Issued By Us**

If this coverage form and any other coverage form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the coverage forms or policies shall not exceed the highest applicable Limit of Insurance under any one coverage form or policy. This condition does not apply to any coverage form or policy issued by us or an affiliated company specifically to apply as excess insurance over this coverage form.

## SECTION V - DEFINITIONS

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means:

1. A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

D. "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph 6.b. or 6.c. of the definition of "mobile equipment".

© Insurance Services Office, Inc., 2009

CA 00 01 03 10
05/23/2014

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. Power cranes, shovels, loaders, diggers or drills; or

   b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in Paragraph **1., 2., 3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

   b. Cherry pickers and similar devices used to raise or lower workers; or

CT788142
Sentry Select Insurance Company
11  00006  0000000001  14143  0  N    54FD9E5F-5969-4C74-A4E3-739A3A4D25FF    05/23/2014
394

6. Vehicles not described in Paragraph 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

a. Equipment designed primarily for:

(1) Snow removal;

(2) Road maintenance, but not construction or resurfacing; or

(3) Street cleaning;

b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

L. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

M. "Property damage" means damage to or loss of use of tangible property.

N. "Suit" means a civil proceeding in which:

1. Damages because of "bodily injury" or "property damage"; or

2. A "covered pollution cost or expense";

to which this insurance applies, are alleged.

"Suit" includes:

a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

O. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

P. "Trailer" includes semitrailer.

Page 12 of 12
CT788142
Sentry Select Insurance Company

© Insurance Services Office, Inc., 2009

CA 00 01 03 10
05/23/2014

COMMERCIAL AUTO
CA 01 96 03 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Texas, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Physical Damage Coverage**

1. The following exclusion is added to Paragraph **B. Exclusions** in the Physical Damage Coverage Section:

   We will not pay for "loss" due to or as a consequence of a seizure of a covered "auto" by federal or state law enforcement officers as evidence in a case against you under the Texas Controlled Substances Act or the federal Controlled Substances Act if you are convicted in such case.

2. Paragraphs **C.3.** and **C.4.** of the **Limit Of Insurance** provision under Physical Damage Coverage do not apply.

3. Paragraph **D. Deductible** in the Physical Damage Coverage Section is amended by the addition of the following:

   At the mutual agreement of you and us, we will not apply the deductible to "loss" to glass, if the glass is repaired rather than replaced.

**B. Changes In Conditions**

The following condition is added:

**Claim-handling Procedures**

1. Within 15 days after we receive written notice of a claim, we will:

   a. Acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgment;

   b. Begin any investigation of the claim; and

   c. Specify the information you must provide in accordance with Paragraph **b.** of the Duties Condition.

   We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

2. After we receive the information we request, we will notify you in writing as to whether:

   a. The claim will be paid;

   b. The claim has been denied, and inform you of the reasons for denial;

   c. More information is necessary; or

   d. We need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.

   We will provide notification, as described in **2.a.** through **2.d.** above, within:

   a. 15 "business days"; or

   b. 30 days if we have reason to believe the "loss" resulted from arson.

   If we have notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

3. If a claim results from a weather-related catastrophe or a major natural disaster as defined by the Texas Department of Insurance, the claim-handling deadlines described above are extended for an additional 15 days.

4. If we notify you that we will pay your claim, or part of your claim, we will pay within five "business days" after we notify you.

CA 01 96 03 12
CT788142
Sentry Select Insurance Company
00001 0000000001 14143 0 N          998C16FA-736S-4F1D-A0A5-7F4B3136473E

© Insurance Services Office, Inc., 2011          Page 1 of 2
05/23/2014
394

However, if payment of the claim or part of the claim is conditioned on your compliance with any of the terms under this policy, we will make payment within five "business days" after the date you have complied with such terms.

5. We will notify the first Named Insured in writing of:

   a. An initial offer to settle a claim made or "suit" brought against any "insured" under the Liability Coverage Section of this policy. The notice will be given no later than the 10th day after the date on which the offer is made.

   b. Any settlement of a claim made or "suit" brought against the "insured" under the Liability Coverage Section of this policy. The notice will be given not later than the 30th day after the date of settlement.

As used in this condition, "business day" means a day other than Saturday, Sunday or a holiday recognized by the state of Texas.

## C. Changes In Uninsured/Underinsured Motorists Coverage

All references to "Uninsured Motorists Coverage" in the title or text of any Coverage Form or endorsement thereto are changed to read "Uninsured/Underinsured Motorists Coverage".

## D. Changes In Trailer Interchange Coverage

The following exclusion is added to Paragraph **B.1. Exclusions** of **Section III – Trailer Interchange Coverage** in the Motor Carrier and Truckers Coverage Forms:

We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**Texas Controlled Substance Act**

We will not pay for "loss" due to or as a consequence of a seizure of a covered "auto" by federal or state law enforcement officers as evidence in a case against you under the Texas Controlled Substances Act or the federal Controlled Substances Act if you are convicted in such case.

**COMMERCIAL AUTO**
**CA 02 43 03 01**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** Paragraphs **2.** and **5.** of the **Cancellation** Common Policy Condition contained in Endorsement **IL 00 17** are replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

The permissible reasons for cancellation are as follows:

**a.** If this policy has been in effect for 60 days or less, we may cancel for any reason except, that under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official.

**b.** If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

**(1)** Fraud in obtaining coverage;

**(2)** Failure to pay premiums when due;

**(3)** An increase in hazard within the control of the insured which would produce an increase in rate;

**(4)** Loss of reinsurance covering all or part of the risk covered by the policy; or

**(5)** If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

**5.** If this policy is canceled, we will send the first Named Insured any premium refund due. The refund will be pro rata, subject to the policy minimum premium. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following Condition is added:

**1.** **Nonrenewal**

**(a)** We may elect to renew this policy except that under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

**(b)** If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

CT788142                                                                    05/23/2014
Sentry Select Insurance Company
00001 0000000001 14143 0 N            9BCF6501-B780-489D-AA48-BFB67180D164            **394**

POLICY NUMBER:  CT788142002

**COMMERCIAL AUTO**
**CA 04 01 03 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS STATED AMOUNT INSURANCE

This endorsement modifies insurance provided under the following:

> BUSINESS AUTO COVERAGE FORM
> BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
> GARAGE COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM
> TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| **Named Insured:** |
| --- |
| **Endorsement Effective Date:** |

## SCHEDULE

| The insurance provided by this endorsement is reduced by the following deductible(s): | | | | |
| --- | --- | --- | --- | --- |
| **Vehicle Number** | **Coverage** | **Limit Of Insurance And Deductible** | | **Premium** |
| PER VEHICLE SCHEDULE | PER POLICY | $ PER VEHICLE | **Limit Of Insurance** | $ INCLUDED |
| | | $ SCHEDULE | **Deductible** | |
| | | $ | **Limit Of Insurance** | $ |
| | | $ | **Deductible** | |
| | | $ | **Limit Of Insurance** | $ |
| | | $ | **Deductible** | |
| | | | **Total Premium** | $ INCLUDED |

**NOTE:**

The amount shown in the Schedule or in the Declarations is not necessarily the amount you will receive at the time of "loss" for the described property.  Please refer to the Limit Of Insurance and Deductible Provisions which follow.

| Designation Or Description Of Covered "Autos" | | |
| --- | --- | --- |
| **Vehicle Number** | **Model Year** | **Trade Name And Model** |
| PER VEHICLE SCHEDULE | PER VEHICLE SCHEDULE | PER VEHICLE SCHEDULE |
| | | |
| | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

**CA 04 01 03 10**
CT788142
Sentry Select Insurance Company

© Insurance Services Office, Inc., 2009

**Page 1 of 2**
05/23/2014
**394**

00001  0000000001  14143  0  N          F910C609-0375-478D-9310-19F3B756248A

**A.** This endorsement provides only those coverages where a premium is shown in the Schedule. Each of these coverages applies only to the vehicles shown as covered "autos".

**B.** For a covered "auto" described in the Schedule, **Physical Damage Coverage – Limit Of Insurance** is replaced by the following:

**Limit Of Insurance**

The most we will pay for "loss" in any one "accident" is the least of the following amounts:

1. The actual cash value of the damaged or stolen property as of the time of the "loss";

2. The cost of repairing or replacing the damaged or stolen property with property of like kind and quality; or

3. The Limit of Insurance shown in the Schedule.

**C. Deductible**

For each covered "auto", our obligation to pay:

1. The actual cash value of the damaged or stolen property at the time of the "loss" will be reduced by the applicable deductible shown in the Schedule.

2. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality will be reduced by the applicable deductible shown in the Schedule.

3. The damages for "loss" that would otherwise be payable will be reduced by the applicable deductible shown in the Schedule prior to the application of the Limit of Insurance shown in the Schedule.

Any Comprehensive Coverage Deductible shown in the Schedule does not apply to "loss" caused by fire or lightning.

© Insurance Services Office, Inc., 2009

POLICY NUMBER: CT788142002

**COMMERCIAL AUTO**
**CA 21 09 05 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS UNINSURED/UNDERINSURED MOTORISTS COVERAGE

For a "covered auto" licensed or principally garaged in, or "garage operations" conducted in, Texas, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the coverage form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

---

**Named Insured:**

**Endorsement Effective Date:**

---

## SCHEDULE

| Limit Of Insurance | |
|---|---|
| $ 85,000 | Each "Accident" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

## A. Coverage

1. We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury" sustained by an "insured" or "property damage" caused by an "accident". The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

2. With respect to damages resulting from an "accident" with a vehicle described in Paragraph **d.** of the definition of "uninsured motor vehicle", we will pay under this coverage only if **a.** or **b.** below applies:

   **a.** The limit of any applicable liability bonds or policies has been exhausted by payment of judgments or settlements; or

   **b.** A tentative settlement has been made between an "insured" and the insurer of the vehicle described in Paragraph **d.** of the definition of "uninsured motor vehicle", and we:

   **(1)** Have been given prompt written notice of such tentative settlement; and

   **(2)** Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us. If we and the Named Insured do not agree as to whether or not a vehicle is actually uninsured, the burden of proof as to that issue will be on us.

---

CA 21 09 05 13
CT788142
Sentry Select Insurance Company

© Insurance Services Office, Inc., 2012

Page 1 of 5
05/23/2014

**394**

1   00003 0000000001 14143 0 N          33F042EC-414B-44BF-9E7A-5587AC786A2D

## B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are insureds:

   a. The Named Insured and any "family member".

   b. Any other person "occupying" a "covered auto".

   c. Any person or organization for damages that person or organization is entitled to recover because of "bodily injury" sustained by a person described in **a.** or **b.** above.

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. The Named Insured for "property damage" only.

   b. Any person "occupying" a "covered auto".

   c. Any person or organization for damages that person or organization is entitled to recover because of "bodily injury" sustained by a person described in **b.** above.

## C. Exclusions

1. We do not provide Uninsured/Underinsured Motorists Insurance:

   a. For "bodily injury" sustained by:

      (1) An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a "covered auto" for Uninsured/Underinsured Motorists Coverage under this coverage form;

      (2) Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a "covered auto" for Uninsured/Underinsured Motorists Coverage under this coverage form; or

      (3) Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured/Underinsured Motorists Coverage on a primary basis under any other coverage form or policy.

   b. For any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of an owner or operator of a vehicle described in Paragraph **d.** of the definition of "uninsured motor vehicle" in accordance with the procedure described in Paragraph **A.2.b.**

   c. For any person for the first $250 of the amount of damage to the property of that person as the result of any one "accident".

   d. For the use of a vehicle without a reasonable belief that the person using the vehicle is entitled to do so. This exclusion does not apply to an individual Named Insured or a "family member" while using a "covered auto".

   e. For any person for "bodily injury" or "property damage" resulting from the intentional acts of that person.

2. This coverage shall not apply directly or indirectly to benefit:

   a. Any insurer or self-insurer under any workers' compensation, disability or similar law.

   b. Any insurer of property.

## D. Limit Of Insurance

1. Regardless of the number of "covered autos", "insureds", policies or bonds applicable, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Uninsured/Underinsured Motorists Coverage shown in the Schedule or Declarations. Subject to this maximum, our limit of liability will be the lesser of:

   a. The difference between the amount of a covered "insured's" damages for "bodily injury" or "property damage" and the amount paid or payable to that covered "insured" for such damages, by or on behalf of persons or organizations who may be legally responsible; or

   b. The applicable limit of liability for this coverage.

2. In order to avoid insurance benefits payments in excess of actual damages sustained, subject to only the limits set out in the Schedule or Declarations and other applicable provisions of this coverage, we will pay all covered damages not paid or payable under any:

   a. Workers' compensation, disability benefits or similar law;

   b. Automobile Medical Payments Coverage; or

   c. Personal Injury Protection Coverage.

3. Any payment under this coverage to or for an "insured" will reduce any amount that "insured" is entitled to recover for the same damages under this policy's Liability Coverage.

© Insurance Services Office, Inc., 2012

**CA 21 09 05 13**
05/23/2014

## 4. Special Provisions For Property Damage

For any "property damage" "loss" to which the Physical Damage Coverage of this policy (or similar coverage from another policy) and this coverage both apply, the Named Insured may choose the coverage from which damages will be paid. Such Named Insured may recover under both coverages, but only if:

**a.** Neither one by itself is sufficient to cover the "loss";

**b.** The Named Insured pays the higher deductible amount (but the Named Insured does not have to pay both deductibles); and

**c.** The Named Insured will not recover more than the actual damages.

## E. Changes In Conditions

The Conditions of the policy are changed for Uninsured/Underinsured Motorists Insurance as follows:

**1.** The reference in **Other Insurance** Condition in the Business Auto and Garage Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Truckers and Motor Carrier Coverage Forms to "other collectible insurance" is replaced by the following:

If there is other applicable similar insurance, we will pay only our share of the "loss". Our share is the proportion that our Limit of Insurance bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible insurance.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss** is changed by adding the following:

**a.** Promptly notify the police if a hit-and-run driver is involved.

**b.** Promptly send us copies of the legal papers if a "suit" is brought.

**c.** Take reasonable steps after "loss" to protect the "covered auto" and its equipment from further "loss". We will pay all reasonable expenses incurred to do this.

**d.** Permit us to inspect and appraise the damaged property before its repair or disposal.

**e.** Promptly notify us in writing of a tentative settlement between an "insured" and the insurer of the vehicle described in Paragraph **d.** of the definition of "uninsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle.

**3. Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

Our rights under this provision do not apply with respect to a tentative settlement between an "insured" and the insurer of an owner or operator of a vehicle described in Paragraph **d.** of the definition of "uninsured motor vehicle" if we:

**a.** Have been given written notice of a tentative settlement between the "insured" and the insurer of the "uninsured motor vehicle"; and

**b.** Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

**a.** That payment will be separate from any amount an "insured" is entitled to recover under the provisions of Uninsured/Underinsured Motorists Coverage; and

**b.** We also have the right to recover the advanced payment.

CA 21 09 05 13
CT788142
Sentry Select Insurance Company

© Insurance Services Office, Inc., 2012

Page 3 of 5
05/23/2014

**394**

00003 0000000001 14143 0 N          33F042EC-414B-44BF-9E7A-5587AC786A2D

4. The following condition is added:

**Arbitration**

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding. However, at any time prior to the arbitrators' decision, either party may revoke the agreement to arbitrate the matter.

**F. Additional Definitions**

The following are added to the **Definitions** Section and have special meaning for Uninsured/Underinsured Motorists Insurance:

1. "Covered auto" means an "auto":

a. Owned or leased by the Named Insured; or

b. While temporarily used as a substitute for an owned "covered auto" that has been withdrawn from normal use because of its breakdown, repair, servicing, "loss" or destruction.

Liability coverage of this policy must apply to the "covered auto".

"Covered auto" includes "autos" (described in **a.** or **b.** above) for which Uninsured/Underinsured Motorists Insurance has not been rejected in writing.

2. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

3. "Occupying" means in, upon, getting in, on, out or off.

4. "Property damage" means injury to or "loss" of use or destruction of:

a. A "covered auto";

b. Property owned by the Named Insured or any "family member" of an individual Named Insured while contained in a "covered auto";

c. Property owned by any other person "occupying" the "covered auto" while contained in the "covered auto"; and

d. Any property owned by the Named Insured or "family member" of an individual Named Insured while contained in any "auto" not owned, but being operated, by such individual Named Insured or any "family member" of the individual Named Insured.

5. "Uninsured motor vehicle" means a land motor vehicle or "trailer" of any type:

a. To which no liability bond or policy applies at the time of the "accident".

b. Which is a hit-and-run vehicle whose operator or owner cannot be identified. The vehicle must hit an "insured", a "covered auto" or a vehicle an "insured" is "occupying".

c. To which a liability bond or policy applies at the time of the "accident", but the bonding or insuring company denies coverage or is or becomes insolvent.

d. Which is an underinsured motor vehicle. An underinsured motor vehicle is one to which a liability bond or policy applies at the time of the accident, but its limit of liability either:

(1) Is not enough to pay the full amount the covered "insured" is legally entitled to recover as damages; or

(2) Has been reduced by payment of claims to an amount which is not enough to pay the full amount the covered "insured" is legally entitled to recover as damages.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

a. Owned by or furnished or available for the regular use of the Named Insured or a "family member" of an individual Named Insured;

b. Owned or operated by a self-insurer under an applicable motor vehicle law;

© Insurance Services Office, Inc., 2012

**CA 21 09 05 13**
05/23/2014

c. Owned by any governmental body unless the operator of the vehicle is uninsured and there is no statute imposing liability for damage because of "bodily injury" or "property damage" on the governmental body for an amount not less than the Limit of Insurance for this coverage;

d. Operated on rails or crawler treads;

e. Designed mainly for use off public roads while not on public roads; and

f. While located for use as a residence or premises.

**CA 21 09 05 13**
CT788142
Sentry Select Insurance Company

© Insurance Services Office, Inc., 2012

**Page 5 of 5**
05/23/2014

00003 0000000001  14143  0  N          33F042EC-414B-44BF-9E7A-5587AC786A2D          **394**

POLICY NUMBER: CT788142002

**COMMERCIAL AUTO**
**CA 22 64 07 08**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS PERSONAL INJURY PROTECTION ENDORSEMENT

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Texas, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## SCHEDULE

| Limit Of Insurance (Each Insured) | Premium |
|---|---|
| $2,500 | $319 |
| $ | $ |
| $ | $ |
| $ | $ |
| **Description Of Covered Autos** (check appropriate box): | |
| X | Any "auto" owned by you. |
| | Any private passenger "auto" owned by you. |
| | Any motor vehicle to which are attached dealer's license plates issued to you. |
| | Any motor vehicle designated in the Declarations of the policy by the letters P.I.P. and a motor vehicle ownership of which is acquired during the policy period by you as a replacement therefor. |
| | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Coverage**

We will pay Personal Injury Protection benefits because of "bodily injury" resulting from a motor vehicle "accident" and sustained by a person "insured". Our payment will only be for "losses" or expenses incurred within three years from the date of the "accident".

Personal Injury Protection benefits consist of:

**1.** Necessary expenses for medical and funeral services.

**2.** 80% of an "insured's" loss of income from employment. These benefits apply only if, at the time of the "accident", the "insured":

**a.** Was an income producer; and

**b.** Was in an occupational status.

These benefits do not apply to any "loss" after the "insured" dies.

**CA 22 64 07 08**
CT788142
Sentry Select Insurance Company

00002 0000000001 14143 0 N       EBF08C67-E5DF-4FCD-A59B-24B02279708D

Loss of income is the difference between:

**a.** Income which would have been earned had the "insured" not been injured; and

**b.** The amount of income actually received from employment during the period of disability.

If the income being earned as of the date of the "accident" is a salary or fixed remuneration, it shall be used in determining the amount of income which would have been earned. Otherwise, the average monthly income earned during the period (not more than 12 months) preceding the "accident" shall be used.

**3.** Reasonable expenses incurred for obtaining services. These services must replace those an "insured" would normally have performed:

**a.** Without pay;

**b.** During a period of disability; and

**c.** For the care and maintenance of the family or household.

These benefits apply only if, at the time of the "accident", the "insured":

**a.** Was not an income producer; and

**b.** Was not in an occupational status.

These benefits do not apply to any "loss" after the "insured" dies.

## B. Who Is An Insured

**1.** You or any "family member" while "occupying" or when struck by any "auto".

**2.** Anyone else "occupying" a "covered auto" with your permission.

## C. Exclusions

We will not provide Personal Injury Protection Coverage for any person for "bodily injury" sustained:

**1.** In an "accident" caused intentionally by that person.

**2.** By that person while in the commission of a felony.

**3.** By that person while attempting to elude arrest by a law enforcement official.

**4.** While "occupying" or when struck by, any motor vehicle (other than a "covered auto") which is owned by you.

**5.** By a "family member" while "occupying" or when struck by any motor vehicle (other than a "covered auto") which is owned by a "family member".

## D. Limit Of Insurance

Regardless of the number of owned "covered autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" in any one "accident" is the limit of Personal Injury Protection shown in the Schedule or in the Declarations.

## E. Changes In Conditions

**1.** The following is added to the **Transfer Of Rights Of Recovery Against Others To Us** Condition:

However, our rights only apply against a person causing or contributing to the "accident" if, on the date of the "loss", the minimum limits required by Texas law have not been established for a motor vehicle involved in the "accident" and operated by that person.

**2.** The reference in the **Other Insurance** Condition in the Business Auto and Garage Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Truckers and Motor Carrier Coverage Forms to "other collectible insurance" is replaced by the following:

If there is other Personal Injury Protection Insurance, we will pay only our share. Our share is the proportion that our Limit Of Insurance bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible Personal Injury Protection Insurance.

**3.** The following Conditions are added:

**a. Payment Provision**

Loss Payments. Benefits are payable:

**(1)** Not more frequently than every two weeks; and

**(2)** Within 30 days after satisfactory proof of claim is received.

**b. Assignment Of Benefits**

Payments for medical benefits will be paid directly to a physician or other health care provider if we receive a written assignment signed by the covered person to whom such benefits are payable.

## F. Additional Definitions

The following are added to the **Definitions** Section and have special meaning for Personal Injury Protection:

**1.** "Covered auto" means an "auto":

**a.** Owned or leased by you; or

© Insurance Services Office, Inc., 2008

**CA 22 64 07 08**

05/23/2014

**b.** While temporarily used as a substitute for an owned "covered auto" that has been withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

Liability coverage of this policy must apply to the "covered auto".

"Covered auto" includes "autos" (described in Paragraphs **a.** and **b.** above) for which Personal Injury Protection coverage has not been rejected in writing.

**2.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

**3.** "Occupying" means in, upon, getting in, on, out or off.

**CA 22 64 07 08**
CT788142
Sentry Select Insurance Company
00002 0000000001 14143 0 N

© Insurance Services Office, Inc., 2008

EBF08C67-E5DF-4FCD-A59B-24B02279708D

**Page 3 of 3**
05/23/2014
**394**

COMMERCIAL AUTO
CA 23 84 01 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury, damage, loss or expense, are enclosed in quotation marks:

**1.** "Terrorism" means activities against persons, organizations or property of any nature:

**a.** That involve the following or preparation for the following:

**(1)** Use or threat of force or violence; or

**(2)** Commission or threat of a dangerous act; or

**(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**b.** When one or both of the following applies:

**(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**2.** "Any injury, damage, loss or expense" means any injury, damage, loss or expense covered under any Coverage Form or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal injury", "personal and advertising injury", "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense", as may be defined under this Coverage Form, Policy or any applicable endorsement.

**B.** Except with respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury, damage, loss or expense" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury, damage, loss or expense" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury, damage, loss or expense. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

**1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

CT788142
Sentry Select Insurance Company
05/23/2014
00002 0000000001 14143 0 N          831990A2-C7BD-4282-8E2A-55E3305FC9FA
394

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **B.5.** and **B.6.** are exceeded.

With respect to this Exclusion, Paragraphs **B.5.** and **B.6.** describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

C. With respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for any "loss", loss of use or rental reimbursement after "loss" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold in Paragraph **C.5.** is exceeded.

**Page 2 of 3**
CT788142
Sentry Select Insurance Company

© ISO Properties, Inc., 2004

CA 23 84 01 06
05/23/2014

With respect to this Exclusion, Paragraph **C.5.** describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

**D.** In the event of any incident of "terrorism" that is not subject to the Exclusion in Paragraphs **B.** or **C.,** coverage does not apply to "any injury, damage, loss or expense" that is otherwise excluded under this Coverage Form, Policy or any applicable endorsement.

**CA 23 84 01 06**
CT788142
Sentry Select Insurance Company

© ISO Properties, Inc., 2004

**Page 3 of 3**
05/23/2014

831990A2-C7BD-4282-8E2A-55E3305FC9FA

COMMERCIAL AUTO
CA 85 02 06 10

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PHYSICAL DAMAGE COVERAGE - DOWNTIME

This endorsement modifies the coverage provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**PHYSICAL DAMAGE COVERAGE, A. Coverage** is amended to include the following:

If this policy provides Physical Damage Coverage on a truck or truck tractor, and a covered "loss" occurs to that vehicle, the coverage is extended to cover, in addition to the Limit of Insurance on this vehicle, the following:

**COVERAGE**

We will pay for "downtime" in an amount of up to a maximum of $150 each day and a maximum of $5,000 each "loss" subject to the following:

"Downtime" coverage will begin the later of:

1.  The seventh day after a covered "loss" has been reported to us; or

2.  The seventh day after we have given you our agreement to pay for certain repairs and you have given the repair facility your authorization to repair your vehicle that is not road-worthy, or

3.  If you choose to wait, or use your vehicle for a while before repairing it, then "downtime" coverage will begin on the seventh day after those repairs, which we had previously given our agreement to pay for, actually start.

"Downtime" coverage will cease:

1.  When the covered repairs are completed by the repair facility and they determine that the vehicle is road-worthy, or

2.  In the event of a total "loss" to the vehicle, the claim for Physical Damage Coverage has been settled and payment has been issued by us.

If repairs have been completed and you dispute the quality of work done by the facility, then "downtime" coverage will continue immediately after we agree to pay for certain additional repairs by the repair facility.

**DEFINITIONS**

"Downtime" means the time a covered "auto" is out of service for repair and in the custody of a repair facility.

"Downtime" payment is determined by taking the gross revenue generated by the covered "auto" and deducting all non-continuing expenses to reach the net loss profit.

CA 85 02 06 10
CT788142
Sentry Select Insurance Company

Page 1 of 1
05/23/2014

00001 0000000001 14143 0 N          76C3BC43-0AF4-48F9-BC9B-6C041F48031A                    394

COMMERCIAL AUTO
CA 85 04 06 10

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PHYSICAL DAMAGE COVERAGE - EXTENSION OF COVERAGE

This endorsement modifies the coverage provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**PHYSICAL DAMAGE COVERAGE, A. Coverage** is amended to include the following:

If this policy provides Physical Damage Coverage for a covered "auto", and a covered "loss" occurs to the covered "auto", the coverage extensions described in paragraphs 1 through 6 below will also apply. Except for Extension 5, Physical Damage For Temporary Substitute Autos, these coverage extensions will apply   in addition the Limit Of Insurance that applies to the covered "auto".

## 1. MISCELLANEOUS EQUIPMENT

We will pay the actual cash value, repair cost or replacement   cost, whichever is less, up to a limit of $2,500 any one occurrence, for "loss" to hand trucks, dollies, pallets, pads, covers, tarpaulins, chains, binders   or any similar equipment used in the shipping or handling of property being transported.

If the equipment is being used on a "trailer" at the time of "loss", the truck or truck tractor operating with the "trailer" must have Physical Damage Coverage in order for this coverage to apply.

In the event of other insurance with us for the same coverage, this policy will be primary and the other policy will be excess.

## 2. ELECTRONIC EQUIPMENT

We will pay the actual cash value, repair cost or replacement   cost, whichever is less, up to a limit of $5,000 any one occurrence, for "loss" to electronic equipment including satellite communication equip-

ment, antennas, tapes, records, discs or other similar devices used with the electronic equipment and other accessories used for audio, visual or data purposes. At the time of "loss", the equipment must be in or on the covered "auto".

We will not pay for the following: equipment used to operate the covered "auto"; radar detection devices; actual data, facts, concepts or instructions converted to a form for use with the electronic equipment nor the cost to reproduce the information.

This insurance will not apply to theft coverage if, at the time of "loss", the covered "auto" is unattended, unless the "loss" is the result of forced entry into the covered "auto" while all doors, windows or other openings are closed and locked and there is evidence of forced entry.

In the event of other insurance for the same coverage,   this policy coverage will be excess over any other collectible insurance.

## 3. PERSONAL PROPERTY/EFFECTS

We will pay the actual cash value, repair cost or replacement   cost, whichever is less, up to a limit of $5,000 any one occurrence, for "loss" to personal property or effects of the "insured". At the time of "loss", the property must be in or on the covered "auto".

This insurance will not apply to theft coverage if, at the time of "loss", the covered "auto" is unattended, unless the "loss" is the result of forced entry into the covered "auto" while all doors, windows or other openings are closed and locked and there is evidence of forced entry.

**CA 85 04 06 10**
CT788142
Sentry Select Insurance Company

**Page 1 of 2**
05/23/2014

Under this extension, we will not pay for "loss" to the following: accounts, bills, currency, deeds, evidences of debt, money, notes or securities; electronic equipment or tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment; jewelry, watches, necklaces, bracelets, gems, gold, platinum, silver, furs; animals, birds, or fish or any motorized vehicle.

In the event of other insurance for the same coverage, this policy coverage will be excess over any other collectable insurance.

4. RENTAL REIMBURSEMENT

We will pay for rental reimbursement expenses for a truck or truck tractor of up to $150 each day or $750 each week subject to a maximum of $5,000 any one occurrence, which are incurred by you for the rental of a replacement "auto". Coverage will begin on the seventh day after the "loss" has been reported to us and will terminate, regardless of the expiration date of the policy, when the first of the following occurs:

a.    The covered "auto" has been replaced;
b.    The covered "auto" has been repaired;
c.    The need for the replacement "auto" no longer exists; or
d.    If the covered "auto" is a total "loss", the claim has been settled and payment has been issued by us.

5. PHYSICAL DAMAGE FOR TEMPORARY SUBSTITUTE AUTOS

If this policy provides a Physical Damage Coverage on an owned truck or truck tractor and that truck or truck tractor is out of service because of its:

a.    Breakdown;
b.    Repair;
c.    Servicing;
d.    "Loss"; or
e.    Destruction;

A covered "auto" for that Physical Damage Coverage shall include a truck or truck tractor you do not own while used with the permission of its owner as a temporary substitute for that covered truck or truck tractor.

For "loss" to a temporary substitute truck or truck tractor, the most we will pay is the actual cash value, repair cost or replacement cost, whichever is less.

This coverage extension will end when the first of the following occurs:

(1)    When the owned covered "auto" has either been repaired or replaced;
(2)    If the covered "auto" you own is a total "loss", when the claim has been settled and payment has been made by us;
(3)    30 days from the date you take possession of the temporary substitute "auto"; or
(4)    The date the policy is cancelled or expires;

6. TOWING COVERAGE

If "loss" to a covered "auto" from a covered cause of "loss" occurs and the "loss" requires the covered "auto" be towed or hauled from the site of the "loss" to a repair or salvage facility, we will also pay the actual cost to tow or haul the covered "auto" to a repair or salvage facility agreed upon by you and us.

**ENDORSEMENT DEDUCTIBLE PROVISIONS**

Coverages 1,2,3 as provided by this endorsement are subject to an aggregate deductible amount of $250 any one occurrence, after all other adjustments, including application of the limits, have been made. This deductible shall apply separately from any other physical damage deductible and is not reduced or waived by the application of any Combined Deductible or Single Deductible or any other deductible provision.

Coverages 4 and 6 provided by this endorsement are not subject to a separate deductible.

A temporary substitute "auto" under Coverage 5 of this endorsement is subject to the same physical damage deductible that applied to the covered owned "auto" that is temporarily out of service.

POLICY NUMBER: CT788142002

COMMERCIAL AUTO
CA 85 15 06 10

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TRUCKERS - INSURANCE FOR NON-TRUCKING USE

This endorsement modifies the coverage provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

Description of covered "auto":

As shown in the Declarations or Vehicle Schedule

Liability Coverage, Uninsured Motorist Coverage, Underinsured Motorist Coverage, Personal Injury Protection Coverage, Property Protection Insurance Coverage or any other Liability Coverage provided by this policy, for a covered "auto" described in this policy, is changed as follows:

1.  The following exclusions are added:

    This insurance does not apply to:

    a.  A covered "auto" while used to carry property in any business.

    b.  A covered "auto" while used in the business of anyone to whom the "auto" is rented, leased or loaned.

2.  Who Is An Insured does not include anyone engaged in the business of transporting property by "auto" for hire who is liable for your conduct.

CA 85 15 06 10
CT788142
Sentry Select Insurance Company
00001 0000000001 14143 0 N          35B77AF0-676C-48D4-82C3-0590F4331426

Page 1 of 1
05/23/2014
394

COMMERCIAL AUTO
CA 85 20 06 10

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLICY CONDITIONS - CANCELLATION FOR UNREPORTED DRIVERS

This endorsement modifies the coverage provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The following is added to the Policy Conditions and applies in addition to the Common Policy Conditions:

1. You must report all new drivers to us within 30 days after employment by you.  Should the driver not meet our underwriting standards, we reserve the right to request that you place the driver in a non-driving capacity in your employ.

Failure by you to comply with this condition of the policy will subject the policy to cancellation by us, even if the policy has been in effect for 60 days or more.

CA 85 20 06 10
CT788142
Sentry Select Insurance Company

**Page 1 of 1**
05/23/2014

00001 0000000001 14143 0 N          D9DB6B3B-FB0A-482A-BD65-C082EDE67B23

**394**

POLICY NUMBER: CT788142002

**COMMERCIAL AUTO**
**CA 99 95 12 01**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS SUPPLEMENTARY DEATH BENEFIT

This endorsement modifies insurance provided under the following:

MEDICAL PAYMENTS COVERAGE
PERSONAL INJURY PROTECTION COVERAGE

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Countersigned By: |
|---|---|
| Named Insured: | (Authorized Representative) |

## A. COVERAGE

We will pay under the provisions of personal injury protection insurance and/or medical payments insurance as afforded by this policy except as limited by this endorsement.

We will pay a supplementary death benefit equal to the limit shown for the coverages but not exceeding ten thousand dollars ($10,000) per person because of death:

1. Caused by an "auto" "accident"; and

2. Sustained by an "insured" while wearing a "seat belt" or protected by an "airbag".

We will pay the benefit if death from an "auto" "accident" occurs within three years of the date of such "accident".

## B. PROOF OF CLAIM FOR DEATH BENEFIT

The "beneficiary" must furnish us with proof of death of the "insured", accompanied by a police report or other suitable proof, that the "insured" at the time of the "auto" "accident" was wearing a "seat belt" or protected by an "air bag".

## C. OTHER INSURANCE

Any amounts payable under the supplementary death benefit shall not be reduced by any other amounts paid or payable under this policy.

## D. ADDITIONAL DEFINITIONS

The following are added to the **Definitions** Section and have special meaning for Supplementary Death Benefit:

1. "Insured" as used in this endorsement means the same persons who are covered under auto medical payments insurance, personal injury protection insurance, and/or garage auto medical payments.

2. "Seat Belt" means manual or automatic safety belts or seat and shoulder restraints or a child restraint device.

3. "Airbag" is a functioning airbag designed to protect the occupant of a seat in an "auto".

4. "Beneficiary" means (in order of priority of payment):

   a. The surviving spouse if a resident in the same household as the deceased at the time of the "accident", or

   b. If the deceased is an unmarried minor, either of the surviving parents who had legal custody at the time of the "accident", or

   c. The estate of the deceased.

**CA 99 95 12 01**
CT788142
Sentry Select Insurance Company

© ISO Properties, Inc., 2001

**Page 1 of 1**
05/23/2014

00001 0000000001 14143 0 N    FDBFA239-996E-41DA-AFBC-365AA33C2ACD

**394**

POLICY NUMBER: CT788142002                                    IL 12 01 11 85

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGE NOTICE

Name and Address of Named Insured:                Agency Name:

Drought Transportation Inc                        Associated Acceptance, Inc
P O Box 567                                        1020 NE Loop 410
Uvalde, TX 78802                                   Suite 300
                                                   San Antonio, TX 78209
                                                   Agency No: 394

The effective date of this change is 09/04/2014.

Your policy has been changed as follows:

An Auto Physical Damage Additional Interest has been added to the policy.

The following form(s) have been added:

CA 01 96 03 12          Texas Changes
CA 85 35 12 10          Loss Payable Clause
CA 85 99 12 10          Additional Insured/Loss Payee Schedule - Auto

The following form(s) have been deleted:

CA 01 96 03 10          Texas Changes

The following form(s) have been changed:

CA 85 98 12 10          Schedule Of Vehicles
CA DS 03 02 13          Business Auto Declarations

This change in your policy does not affect your premium.

IL 12 01 11 85                    Copyright, Insurance Services Office, Inc.,  1983          **Page 1 of 1**
CT788142                         Copyright, ISO Commercial Risk Services, Inc.,  1983          09/04/2014
Sentry Select Insurance Company
00001 0000000001 14247 0 N       8432BD59-EEB9-4132-B621-E30AED7D0B53

POLICY NUMBER:  CT788142002                                          CA 85 99 12 10

# ADDITIONAL INSURED/LOSS PAYEE SCHEDULE - AUTO

The following information is a list of accompanying additional insured/loss payee endorsements which form a part of your Business Auto coverage.  The copy of the additional insured/loss payee endorsement has been sent to the designated party.

| Additional Insured | Endorsement Number | Endorsement Name |
|---|---|---|
| Hondo National Bank<br>702 E Main<br>Uvalde, TX 78801<br>Description<br>Loss Payee | CA 85 35 12 10 | Loss Payable Clause |

| Model Year | Make | VIN | Stated Value |
|---|---|---|---|
| 2007 | International | 2HSCNSBR07C366279 | $47,000 |
| 2004 | Freightliner | 1FUJA6CK74LM95618 | $44,000 |
| 1999 | Vantage | 4EPPA4124XBBA2523 | $51,000 |
| 1999 | Vantage | 4EPPA4123XBBA2531 | $51,000 |
| 2005 | Peterbilt | 1XP5DB9X35N861610 | $45,000 |
| 1999 | Peterbilt | 1XP5DB9X8XD501788 | $37,000 |
| 2001 | Peterbilt | 1XP5DB9X51D542564 | $47,000 |
| 1998 | Vantage | 4EPPA4129WBBA2225 | $47,000 |
| | | | Deductible<br>$1,000 |

**Change effective 09/04/2014**
**CA 85 99 12 10**
CT788142
Sentry Select Insurance Company

1    00001  0000000001  14247  0  N                    80A71D08-FD26-4AED-8C0E-2F5899B875B7

**Page 1 of 1**
09/04/2014

COMMERCIAL AUTO
CA 01 96 03 12

⬤

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# TEXAS CHANGES

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Texas, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Physical Damage Coverage**

1. The following exclusion is added to Paragraph **B. Exclusions** in the Physical Damage Coverage Section:

   We will not pay for "loss" due to or as a consequence of a seizure of a covered "auto" by federal or state law enforcement officers as evidence in a case against you under the Texas Controlled Substances Act or the federal Controlled Substances Act if you are convicted in such case.

2. Paragraphs **C.3.** and **C.4.** of the **Limit Of Insurance** provision under Physical Damage Coverage do not apply.

3. Paragraph **D. Deductible** in the Physical Damage Coverage Section is amended by the addition of the following:

   At the mutual agreement of you and us, we will not apply the deductible to "loss" to glass, if the glass is repaired rather than replaced.

**B. Changes In Conditions**

The following condition is added:

**Claim-handling Procedures**

1. Within 15 days after we receive written notice of a claim, we will:

   a. Acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgment;

   b. Begin any investigation of the claim; and

   c. Specify the information you must provide in accordance with Paragraph **b.** of the Duties Condition.

   We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

2. After we receive the information we request, we will notify you in writing as to whether:

   a. The claim will be paid;

   b. The claim has been denied, and inform you of the reasons for denial;

   c. More information is necessary; or

   d. We need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.

   We will provide notification, as described in **2.a.** through **2.d.** above, within:

   a. 15 "business days"; or

   b. 30 days if we have reason to believe the "loss" resulted from arson.

   If we have notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

3. If a claim results from a weather-related catastrophe or a major natural disaster as defined by the Texas Department of Insurance, the claim-handling deadlines described above are extended for an additional 15 days.

4. If we notify you that we will pay your claim, or part of your claim, we will pay within five "business days" after we notify you.

CA 01 96 03 12
CT788142
Sentry Select Insurance Company

© Insurance Services Office, Inc., 2011

Page 1 of 2
09/04/2014

However, if payment of the claim or part of the claim is conditioned on your compliance with any of the terms under this policy, we will make payment within five "business days" after the date you have complied with such terms.

5. We will notify the first Named Insured in writing of:

a. An initial offer to settle a claim made or "suit" brought against any "insured" under the Liability Coverage Section of this policy. The notice will be given no later than the 10th day after the date on which the offer is made.

b. Any settlement of a claim made or "suit" brought against the "insured" under the Liability Coverage Section of this policy. The notice will be given not later than the 30th day after the date of settlement.

As used in this condition, "business day" means a day other than Saturday, Sunday or a holiday recognized by the state of Texas.

## C. Changes In Uninsured/Underinsured Motorists Coverage

All references to "Uninsured Motorists Coverage" in the title or text of any Coverage Form or endorsement thereto are changed to read "Uninsured/Underinsured Motorists Coverage".

## D. Changes In Trailer Interchange Coverage

The following exclusion is added to Paragraph **B.1. Exclusions** of **Section III – Trailer Interchange Coverage** in the Motor Carrier and Truckers Coverage Forms:

We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**Texas Controlled Substance Act**

We will not pay for "loss" due to or as a consequence of a seizure of a covered "auto" by federal or state law enforcement officers as evidence in a case against you under the Texas Controlled Substances Act or the federal Controlled Substances Act if you are convicted in such case.

© Insurance Services Office, Inc., 2011

CA 01 96 03 12

09/04/2014

POLICY NUMBER:  CT788142002

**COMMERCIAL AUTO**
**CA 85 35 12 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSE

This endorsement modifies the coverage provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.


**Named Insured:**



**Effective Date:**                                              **Expiration Date:**



**SCHEDULE:**

**Loss Payee:**                    See Additional Insured/Loss Payee Schedule - Auto



Vehicle Description:
Total Vehicle & Equipment Value:
Equipment Description:
Equipment Value (if applicable):
Deductible:

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** We will pay, as interest may appear, you and the loss payee named in the policy for "loss" to a covered "auto".

**B.** The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

**C.** We may cancel the policy as allowed by the CANCELLATION Common Policy Condition.

Cancellation ends this agreement as to the loss payee's interest. If we cancel the policy we will mail you and the loss payee the same advance notice.

**D.** If we make any payments to the loss payee, we will obtain his or her rights against any other party.

EXHIBIT C

At 2:43 o'clock P M

CAUSE NO. 14-10-12-460-DCVAJA

OCT 1 5 2014

MARICELA G. GONZALEZ
District Clerk, Dimmit County, Texas

| | | |
|---|---|---|
| ADRIAN MARTINEZ | § | IN THE DISTRICT COURT OF |
| | § | |
| V. | § | DIMMIT COUNTY, TEXAS |
| | § | |
| CRAIG REID GOECKERITZ, | § | |
| CIRCLE BAR A, INC. | § | |
| and DROUGHT TRANSPORTATION, | § | 365th JUDICIAL DISTRICT |
| LLC | § | |

## PLAINTIFF'S ORIGINAL PETITION, JURY DEMAND AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, ADRIAN MARTINEZ Plaintiff in the above entitled and numbered cause, complaining of and against CRAIG REID GOECKERITZ, CIRCLE BAR A, INC. and DROUGHT TRANSPORTATION, LLC, Defendants herein, and for causes of action would respectfully show unto the Court the following:

### I.
### DISCOVERY CONTROL PLAN

1.0     Discovery is intended to be conducted under Level 3 of the Texas Rules of Civil Procedure 190.

A True Copy of the original, I Certify,
the 15th day of October 20 14
MARICELA G. GONZALEZ
Clerk of the District Court
Dimmit County, Texas
By _____ Deputy

### II.
### PARTIES

2.0     Plaintiff is a resident of resident of Hidalgo County, Texas.

2.1     Defendant, **CRAIG REID GOECKERITZ,** is an individual residing in the State of Texas who may be served with service of process at 333 Silver Buckle, Schertz, Texas  78154, or wherever he may be found.

2.2     Defendant, **CIRCLE BAR A, INC.,** is a Domestic For-Profit Corporation doing business in the State of Texas and may be served with service of process by serving its Registered Agent, Wayon Aldrich, 27035 Old Campbellton Rd., San Antonio, Texas  78264, or wherever he may be

found.

2.3    Defendant, DROUGHT TRANSPORTATION, LLC, LLC, is a Domestic Limited Liability Company (LLC) doing business in the State of Texas and may be served with service of process by serving its Registered Agent, Brandon L. Laffere, 809 Black Street, Uvalde, Texas 78801, or wherever he may be found.

### III.
### JURISDICTION & VENUE

3.0    Venue is proper in Dimmit County, Texas, pursuant to Tex. Civ. Prac. & Rem. Code §15.001 *et seq.* because all or a substantial part of the events or omissions giving rise to the claims arose in Dimmit County, Texas. This Court has jurisdiction over the parties and subject matter hereof. The amount in controversy exceeds the minimum jurisdictional limits of this Court.

### IV.
### FACTS

4.0    On or about September 26, 2014, Plaintiff was lawfully driving in a 2012 Dodge Ram, traveling east bound on FM 133 in Catarina, Dimmit County, Texas. At the time in question, Defendant CRAIG REID GOECKERITZ, was driving a 2004 Freightliner Tractor Trailer in the same direction. As Plaintiff was making a left turn onto a private drive, Defendant, changed lanes into oncoming traffic, striking Plaintiff's vehicle.

4.1    At such time, Defendant CRAIG REID GOECKERITZ was working in the course and scope of his employment with CIRCLE BAR A, INC. and/or DROUGHT TRANSPORTATION, LLC.

### V.
### NEGLIGENCE OF DEFENDANTS

#### A.  CRAIG REID GOECKERITZ

5.0    At the time of the accident made the basis of this suit, Defendant, CRAIG REID

---

GOECKERITZ, was operating the aforementioned vehicle in a negligent and careless manner in the following respects which, among others, may be shown at the trial of this cause:

1. In failing to keep a proper lookout and in willful and wanton disregard for the safety of persons and property in violation of Tex Transp. Code Ann §545.053;

2. In failing to yield;

3. Failing to pass to the left, safe distance in violation of Sec. 545.054 of the Texas Transportation Code; and

4. In failing to operate the vehicle in a reasonable and prudent manner.

5.1    Each of these acts and omissions, singularly or in combination with others, constitute negligence which was the proximate cause of this incident, and the injuries sustained by the Plaintiff. Additionally, Defendant's acts or omissions in violating the Texas Transportation Code as listed above constitute negligence per se.

### B. CIRCLE BAR A, INC.

5.2    The above-described collision was proximately caused by the negligence of Defendant CIRCLE BAR A, INC. as a result of its negligent entrustment of the subject vehicle to Defendant CRAIG REID GOECKERITZ when it knew or should have known that he was not a safe driver.

5.3    Defendant CRAIG REID GOECKERITZ was an agent and/or servant of Defendant CIRCLE BAR A, INC. As such, Defendant CIRCLE BAR A, INC. is responsible for the conduct of Defendant CRAIG REID GOECKERITZ due to the master-servant relationship which existed, and under the doctrine of Respondeat Superior.

### C. DROUGHT TRANSPORTATION, LLC

5.4    The above-described collision was proximately caused by the negligence of Defendant DROUGHT TRANSPORTATION, LLC as a result of its negligent entrustment of the subject vehicle to Defendant CRAIG REID GOECKERITZ when it knew or should have known that he was not a safe driver.

5.5    Defendant **CRAIG REID GOECKERITZ** was an agent and/or servant of Defendant

**DROUGHT TRANSPORTATION, LLC.**    As such, Defendant **DROUGHT**

**TRANSPORTATION, LLC** is responsible for the conduct of Defendant **CRAIG REID**

**GOECKERITZ** due to the master-servant relationship which existed, and under the doctrine of

Respondeat Superior.

## VI.
## DAMAGES

6.0    Said elements of damage which Plaintiff seeks to recover from Defendants includes

compensation for the following:

1.    The physical pain and mental anguish sustained by Plaintiff from date of injury to the time of trial;

2.    The physical pain and mental anguish that Plaintiff will suffer in the future;

3.    Loss of earnings sustained by Plaintiff from date of injury to time of trial;

4.    Loss of earnings and earning capacity reasonably anticipated to be suffered by Plaintiff in the future;

5.    Reasonable and necessary medical expenses incurred by Plaintiff in the treatment of Plaintiff's injuries from date of injury to time of trial;

6.    Reasonable and necessary medical expenses reasonably anticipated to be sustained by Plaintiff in the future for treatment of Plaintiff's injuries;

7.    Past and future physical disfigurement; and

8.    Past and future physical impairment;

As such, Plaintiff affirmatively pleads that he seeks monetary relief over

$200,000.00 but not more than $1,000,000.00.

## VII.
## REQUEST FOR JURY TRIAL

7.0    Plaintiff requests a jury trial.

## VIII.
## ALTERNATIVE PARAGRAPH NO. 1

8.0     In the alternative, Plaintiff would show that if any injury and/or condition from which he currently suffers was pre-existing, then such condition was aggravated and/or exacerbated by the negligence of the Defendants herein

## IX.
## ALTERNTIVE PARAGRAPH NO. 2

9.0     In the alternative, Plaintiff would show that if he suffers from any subsequent injury and/or condition, then such injury and/or condition was aggravated and/or exacerbated by the negligence of the Defendants herein.

## X.
## REQUEST FOR DISCLOSURE

10.0    Pursuant to Rule 194 of the Texas Rules of Civil Procedure, you are hereby requested to disclose, within fifty (50) days of service of this document, the information or material described below.  Please serve your responses on counsel representing this Plaintiff, and produce true and correct copies of all documents and other tangible items with your responses, in accordance with Rule 194.4.

10.1    Plaintiff requests disclosure of the following, pursuant to Rules 194.2(a) through 194.2(l):

(a)     the correct names of the parties to the lawsuit;

(b)     the name, address, and telephone number of any potential parties;

(c)     the legal theories and, in general, the factual bases of Defendant's claims or defenses;

(d)     the amount and any method of calculating economic damages;

(c)     the name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case;

(f)     for any testifying expert:

   (1)     the expert's name, address, and telephone number;

   (2)     the subject matter on which the expert will testify;

   (3)     the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of Defendant, documents reflecting such information;

   (4)     if the expert is retained by, employed by, or otherwise subject to the control of Defendant:

      (A)     all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

      (B)     the expert's current resume and bibliography;

(g)     any discoverable indemnity and insuring agreements;

(h)     any discoverable settlement agreements;

(i)     any discoverable witness statements;

(j)     in a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills that are reasonably related to the injuries or damages asserted or, in lieu thereof, an authorization permitting the disclosure of such medical records and bills;

(k)     in a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills obtained by the responding party by virtue of an authorization furnished by the requesting party.

(l)     the name, address, and telephone number of any person who may be designated as a responsible third party.

## XI.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that these Defendants be cited to appear and answer herein, and that upon final trial hereof, Plaintiff recovers from said Defendants, jointly and severally, a sum over $200,000.00 but not more than $1,000,000.00, costs

of Court, pre-judgment and post-judgment interest at the legal rate, and demand for judgment for all other relief to which the Plaintiff deemed himself entitled.

Respectfully submitted,
THE STERN LAW GROUP

_____
JEFFREY M. STERN
SBN: 19175660
4909 Bissonnet St., Suite 100
Bellaire, Texas 77401
713/661-9900
713/666-5922 Facsimile
Email: jstern@stern-lawgroup.com

**ATTORNEY FOR PLAINTIFF**

EXHIBIT D

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SENTRY SELECT INSURANCE COMPANY | § § § | |
| vs. | § § | CIVIL ACTION NO. 5:15-cv-00890-FB |
| DROUGHT TRANSPORTATION, LLC, CRAIG R. GOECKERITZ, AND CIRCLE BAR A, INC. | § § § § | |

## AFFIDAVIT OF RUSSELL J. BOWMAN

| | |
|---|---|
| STATE OF TEXAS | § § |
| COUNTY OF DALLAS | § |

Before me, the undersigned notary public, personally came and appeared Russell J. Bowman, who being sworn under oath, did state the following:

1.  "My name is Russell J. Bowman. I am over the age of 21 and have never been convicted of a felony or crime involving moral turpitude. I am not suffering under any mental or physical disabilities that would prevent me from making this affidavit. All of the facts recited in this affidavit are true and correct and are based on my personal knowledge. Such facts were gained in my capacity as attorney for Sentry Select Insurance Company ("Sentry"), the Plaintiff in this lawsuit.

2.  Attached as Exhibit "E" to this affidavit and expressly made a part hereof is a true and correct copy of the examination under oath of Craig Richard Esser. I have personal knowledge this is a true and correct copy of Mr. Esser's examination, because I took that examination under oath of Mr. Esser.

3.  Attached as Exhibit "F" to this affidavit and expressly made a part hereof is a true and

correct copy of the examination under oath of Craig Reid Goeckeritz.   I have personal knowledge this is a true and correct copy of Mr. Goeckeritz's examination, because I took that examination under oath of Mr. Goeckeritz.

4.   As of the time of the filing of Sentry's motion for summary judgment in this lawsuit, the pleading entitled "Plaintiff's Original Petition, Jury Demand and Request for Disclosure" which is attached as Exhibit "A" to Circle Bar A, Inc.'s Original Answer (Doc. No. 7) filed in this lawsuit, is the current live pleading of the Plaintiff, Adrian Martinez, in Cause No. 14-10-12401-DCV AJA, styled *Adrian Martinez v. Craig Reid Goeckeritz, Circle Bar A, Inc. and Drought Transportation, LLC*, filed in the 365th Judicial District Court, Dimmit County, Texas.

FURTHER AFFIANT SAYETH NOT."

Russell J. Bowman

SUBSCRIBED   AND   SWORN   TO   BEFORE   ME,   on   this /9th day   of November , 2015, to certify which witness my hand and seal of office.

Notary Public in and for
the State of Texas

LINDA BARNES
Printed Name of Notary

LINDA BARNES
Notary Public, State of Texas
My Commission Expires
July 23, 2017

My commission expires:

July 23, 2017

AFFIDAVIT OF RUSSELL J. BOWMAN - Page 2

# EXHIBIT E

1

------------------------------------------------------------

EXAMINATION UNDER OATH OF CRAIG RICHARD ESSER

JANUARY 15, 2015

------------------------------------------------------------

EXAMINATION UNDER OATH OF of RICHARD ESSER, produced as a witness at the instance of Russell Bowman, Drought Transportation, Inc., and duly sworn, was taken on  January 15, 2015, from 10:22 a.m. to 10:30 a.m., before Janis Laws, Certified Shorthand Reporter in and for the State of Texas, reported by method of machine shorthand, at the Law Offices of Ted Rodriguez, 201 North 5th Street, Carrizo Springs, Dimmit County, Texas.

It is stipulated and agreed by and between Counsel and the respective parties hereto that the Examination Under Oath of the Witness named in the caption hereto, may be taken at this time and place, pursuant to Agreement, and that the said Examination Under Oath, or any part thereof, when so taken, may be used on the trial of this case the same as if the Witness were present in court testifying in person.

\* \* \* \* \*

2

A P P E A R A N C E S

BOWMAN & STELLA
800 W. Airport Freeway, Suite 860
Irving, Texas   75062
BY:  MR. RUSSELL J. BOWMAN

ATLAS & HALL, L.L.P.
124 N. East Street
Uvalde, Texas   78801
BY:  MR. CHARLES W. DOWNING

LAW OFFICES OF TED RODRIGUEZ
201 North 5th Street
Carrizo Springs, Texas   78834
BY:  MR. TED RODRIGUEZ

RICHARD ESSER,
    The Witness; and

JANIS LAWS,
    Certified Shorthand Reporter and
    Registered Professional Reporter
    in and for the State of Texas

\* \* \* \* \* \*

SAN ANTONIO COURT REPORTING, FIRM NO. 175
555 E. BASSE ROAD, SUITE 205
SAN ANTONIO, TEXAS   78209   (210) 227-1525

3

INDEX

PAGE

STIPULATIONS...................................................1
APPEARANCES....................................................3


EXAMINATION                                              PAGE

RICHARD ESSER

Direct Examination by Mr. Bowman..............................4

EXHIBITS                                                 PAGE

1      Independent Contractor Lease Agreement.................6

                                                         PAGE

REPORTER'S CERTIFICATE.......................................12

-o-O-o-

4

RICHARD K. ESSER,

having been first duly sworn, testified as follows:

DIRECT EXAMINATION

Q    (BY MR. BOWMAN) Could I get you to state your full name for the record, please?

A    Richard Keith Esser.

Q    Mr. Esser, my name's Russell Bowman.  We just had a chance to meet just a few minutes ago.  I'm here to take your Examination Under Oath in connection with the auto accident that Mr. Goeckeritz had with Adrian Martinez.  Have you ever given one of these before?

A    No, I have not.

Q    Basically, like I told Mr. Goeckeritz, I'll be asking some questions today to try to get some information to send on to Century.  As you can tell, the court reporter's taking down what we're saying with this machine, so if you could give all verbal answers to my questions, that'd be great.  And if you -- if I ask you something, just like what Mr. Goeckeritz did, if it just doesn't seem to make sense or something, just stop and tell me.  I'll be happy to rephrase it.

With that in mind, we can go ahead and get started so I can try to get you out of here real quick, if you're ready.

A    Let's do it.

Q    First off, your current address?

5

A    1047A Kilgore Street, Pleasanton, Texas, 78064.

Q    And that was Pleasanton?

A    Yes.

Q    And your phone number?

A    (830)279-5801.

Q    And then your date of birth?

A    12/14/75.

Q    And your Texas driver's license number?

A    15748854.

Q    A little fast for me.  15748 --

A    -- 854.

Q    Got it.  And then just the last three of your Social?

A    971.

Q    And, now, where are you -- I know this is going to sound rather obvious since you're here, but I've just got to have it for the record.  Where are you currently employed?

A    Drought Transportation.

Q    And what's your position there?

A    I guess Fleet Manager, you could say.

Q    And just -- And this is just approximately, but about how long have you been with Drought?

A    Three years.

Q    And approximately how long have you been a Fleet Manager with Drought?

A    About three years.

6

Q    Now, just as an overview, what are your duties as a Fleet Manager?

A    Hire drivers, make sure trucks are maintained.

Q    And as far as that goes, that would include the physical operation or the running of the vehicles, but any other matters --

A    I make sure if they're broke down, they get fixed.

Q    Okay.  That's what I was trying to get at.  Now, as far as the accident Mr. Goeckeritz had with Mr. Martinez, do you know which truck of Drought's Mr. --

A    12 -- 1228.

Q    1228.  And do you know what kind of truck -- or this might be an easier way to do it.

(Exhibit No. 1 marked)

Q    (BY MR. BOWMAN) Let me show you, first, what I've marked as Exhibit 1.  If you could, look at that and tell me if you recognize that document.

A    I do.

Q    And what is Exhibit 1?

A    That is a Circle Bar A Independent Contract Lease Agreement.

Q    Now, if you could turn to Page 7 of that exhibit.  Was the truck Mr. Goeckeritz driving at the time of his accident with Mr. Martinez that 2004 Freightliner, Model CL4, that's shown on that page?

7

A    It is.

Q    And then -- If I could see that exhibit just for a second. And so what I'll do, I'll circle that on Page 7, but just for the record, what I've circled on Page 7 of Exhibit 1, that's the truck Mr. Goeckeritz was driving at the time of his accident with Mr. Martinez?

A    Correct.

Q    Now, this lease agreement that Drought has with Circle Bar, I take it you're familiar with that lease agreement, the existence of it?

A    Absolutely no.

Q    Oh, you're not?

A    I'm familiar that it's here, but I have no idea what it says.

Q    Oh, okay. Let me -- And if you don't know, you don't know. That's fine. Do you have an understanding of what Drought does as far as supplying, you know, trucks or drivers to Circle Bar as they may need them?

A    Come again.

Q    Yeah. As far as -- Say Circle Bar needs a driver or one of these trucks that's in the lease agreement to haul a load for them. Do you understand the mechanics of how that works? I mean, does someone at Circle Bar call you guys or do they call a driver direct? Do you know how that process works?

This may be easier. Let me try to do it this

8

way. You were here while I was asking Mr. Goeckeritz about the shipments that he did on September the 24th, the 25th, and the 26th. Right?

A    Correct.

Q    As far as how that got initiated where Mr. Goeckeritz was called out there, do you know how that process works? And by that, I mean, does someone with Circle Bar contact Drought first or do they just contact the driver or --

A    With dispatching?

Q    Yes.

A    No. They -- Circle Bar A has direct contact with drivers.

Q    Okay. So Drought doesn't even have to kind of be the middleman in any of that?

A    No.

Q    Okay. And then as far as paperwork on shipments, I take it copies are provided by the driver to Drought so you guys can have a record of that?

A    No. We can get them from Circle Bar A, but I don't need them. We -- They go straight -- directly to the Circle Bar A office.

Q    And as far as any compensation or payments Drought receives from Circle Bar, you know, for any use of trucks or drivers pursuant to this lease agreement, do you know how that works at all?

A    They pay Drought and then Drought pays drivers.

Q    And as far as how much Drought may get paid for a shipment or what have you, do you know what that's based on or how that's determined?

A    Percentage.

Q    And when you say a percentage, percentage of --

A    Of the load.

Q    Okay.  So whatever the actual shipping price may be for a load, Drought gets a certain percentage of it?

A    Correct.

Q    Okay.  And in this particular instance, when Mr. Goeckeritz was on these transports on September the 24th, 25th, and 26th, when he's being dispatched from various locations by Circle Bar A, does Drought have any input or feedback or, really, even any knowledge one way or another of what's going on?

A    Knowledge, maybe, of where they're at, but, again, Circle Bar A does all the dispatching.

Q    Okay.  And as far as any HOS Reports that the driver may have to fill out while he's on these transports for Circle Bar A, is that something that's submitted to Drought or is that submitted by the driver to Circle Bar A?

A    HOS as in --

Q    Hours of Service Reports.

A    They'll -- They'll go to the Safety Department of

10

Circle Bar A.

Q    Okay.  And I take it that's because the driver is transporting shipments for Circle Bar A?

A    That's because that's their DOT number that we run under.

Q    And when you say the DOT number, that's Department of Transportation?

A    Yes.  They have to abide by the law.

Q    And do you know if, under the lease -- And if you don't know, you don't know.  That's fine.  But do you know whether it was Drought or Circle Bar A that was required to maintain the trucker's liability insurance that the law requires?

A    Oh, I have --

Q    And if you don't know --

A    I have no idea.  I don't.

Q    Okay.  That's fine.

        MR. BOWMAN:  Okay.  I think that's all I have. I told you I'd be quick.

        (EXAMINATION UNDER OATH CONCLUDED AT 10:30 A.M.)

11

CHANGES AND SIGNATURE

PAGE    LINE            CORRECTION AND REASON

IF YOU DO NOT WISH TO MAKE ANY CHANGES, PLEASE NOTE "NONE" ABOVE.

    I, RICHARD ESSER, have read the foregoing Examination Under Oath and hereby affix my signature that same is true and correct, except as noted above.



                                                RICHARD ESSER

THE STATE OF TEXAS    )
COUNTY OF ATASCOSA    )

        Before me, Richard Esser, on this the 14th day of February, 2015, personally appeared RICHARD ESSER, known to me (or proved to me under oath or through _____) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

                                        JANET B. VOLZ
                                        Notary Public
                                        STATE OF TEXAS
                                        My Comm. Exp. May 21, 2017

                                                Janet B. Volz
                                                Notary Public in and for
                                                the State of Texas
My commission expires: May 21, 2017

SAN ANTONIO COURT REPORTING, FIRM NO. 175
555 E. BASSE ROAD, SUITE 205
SAN ANTONIO, TEXAS 78209 (210) 227-1525

12

REPORTER'S CERTIFICATION FROM THE

EXAMINATION UNDER OATH OF RICHARD ESSER

JANUARY 15, 2015

I, JANIS LAWS, Certified Shorthand Reporter and

Notary Public in and for the State of Texas, hereby certify to

the following:

That the witness, RICHARD ESSER, was duly

sworn by the officer and that the transcript of the

Examination Under Oath is a true record of the testimony

given by the Witness;

That the Examination Under Oath transcript was

submitted on January 26, 2015, to the witness or to the

attorney for the witness for examination, signature and

returned to me by February 15, 2015;

That the amount of time used by each party at

the deposition is as follows:

Russell J. Bowman - (8 minutes)

SAN ANTONIO COURT REPORTING, FIRM NO. 175
555 E. BASSE ROAD, SUITE 205
SAN ANTONIO, TEXAS  78209  (210) 227-1525

13

That pursuant to information given to the deposition officer at the time said testimony was taken, the following includes counsel for all parties of record:

Russell J. Bowman, Attorney for Drought Transportation;

Charles W. Downing, Attorney at Law;

Ted Rodriguez, Attorney at Law.

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Certified to by me this 22 day of January, 2015.

JANIS LAWS, Texas CSR #3460
Expiration Date: 12-31-2016
San Antonio Court Reporting
Firm Registration No. 175
555 E. Basse Road, Suite 205
San Antonio, Texas 78209
(210) 227-1525

14

That $_____ is the Examination officer's charges to Russell J. Bowman for preparing the original Examination Under Oath transcript and any copies of exhibits;

Certified by me this _____ day of _____, 2015.

                                    _____
                                    JANIS LAWS, Texas CSR #3460
                                    Expiration Date: 12-31-2016
                                    San Antonio Court Reporting
                                    Firm Registration No. 175
                                    555 E. Basse Road, Suite 205
                                    San Antonio, Texas  78209
                                    (210) 227-1525

                    ORIGINAL NOT VALID
                 UNLESS SIGNED BY REPORTER



# INDEPENDENT CONTRACTOR
# LEASE AGREEMENT

THIS agreement ("Agreement") is entered into this 27 day of August 2012, at 10:00 AM CST between Circle Bar A, Inc. ("Lessee"), and Drought Transportation ("Lessor").

WHEREAS, Lessor is engaged in the transportation of general freight by motor vehicle that desires to transport goods for Lessee; and
WHEREAS, to facilitate such transportation and for the convenience of handling such transaction, the parties have agreed to the terms and conditions under which transportation shall be made, as set forth in this Agreement.
THEREFORE, in consideration of the mutual promises and conditions in this Agreement, it is hereby agreed as follows:

## (1) GENERAL PROVISIONS:

(a) Lessor, in anticipation of its operations under this Agreement, shall secure all permits, licenses and approvals necessary for the accomplishment of the work to be performed. And Lessor shall comply with each applicable law, rule, order and regulation of all governments and agencies, whether federal, state or local. Lessor shall furnish Lessee with satisfactory evidence of compliance on a QUARTERLY basis. Among other things, Lessor shall provide Lessee with a certificate from the Federal Motor Carrier Safety Administration (FMCSA) confirming that Lessor holds contract authority from the FMCSA covering the commodities and transportation routes to which this agreement relates. Moreover, Lessor shall give immediate notice to Lessee of any cancellation or modification of such authority. When transporting hazardous waste, substance or material pursuant this agreement, Lessor shall comply with all applicable federal, state and local hazardous waste, substance and material laws and regulations, and Lessor shall furnish Lessee with satisfactory evidence thereof whenever requested to do so.

(b) All cargo shall be transported in accordance with this agreement and the provisions of Lessee's tariff or service contracts applicable to such cargo. Cargo shall include all containers in which goods are packed when received by Lessor under its agreement with Lessee.

{01966367.DOCX / }

1



(c) This agreement shall not be modified or altered unless in writing and signed by both parties to this agreement.

(d) This agreement shall supersede all previous contracts and agreements between Lessee and Lessor relating to the transportation of freight, and this agreement shall remain in full force and effect for one (1) year from the date hereof and from year to year thereafter, subject to the right of termination by either party at any time on thirty (30) days written notice.

(e) It is the distinct intention of the parties that Lessor shall employ all persons operating its Equipment under this Agreement; that such persons shall be and will constantly remain the employees of Lessor; that Lessor shall be an independent contractor of Lessee; and nothing in this Agreement will be construed to be inconsistent with that relationship or status between Lessor and Lessee. Our relationship is subject to Government regulation. Lessor shall have the responsibility of satisfying certain regulatory requirements, by:

1. Equipping and maintaining the Equipment per governmental regulation including identifying it with appropriate placards;
2. Conducting lawful operations;
3. Utilizing drivers who have been verified as meeting regulatory and insurance qualifications and are able to and will conduct safe operations;
4. Providing Lesee with Lessor's maintenance documents as prescribed by DOT and other government agencies in a timely manner.

(f) Lessor shall determine how to provide Lessee with the independent contractor service contemplated by this agreement, and Lessor shall be responsible for:

1. Selecting and supervising all workers Lessor engages, and then insuring that they meet all Government and Circle Bar A Inc. standards;
2. Selecting, securing and maintaining Lessor's Equipment per all applicable Federal and State regulations;
3. Selecting all routes; and
4. Paying all operating expenses, including all expenses of fuel, oil, repairs to the Equipment, license and permits, fuel and road taxes, use taxes, fines for parking, moving or weight violations, or any other levies or assessments.

(g) The parties recognize their relationship as that of CARRIER and INDEPENDENT CONTRACTOR and not as an EMPLOYER-EMPLOYEE relationship. No person Lessor may engage shall be considered as Lessee's employee. Also, neither party is the agent of the other and neither has the right to bind the other unless specifically authorized in writing. Recognizing the above, Lessor agrees to:

{01966367.DOCX / }

2

1. Advise all third parties of the nature of this relationship;
2. Fulfill all obligations related to federal, state and local income, withholding and employment taxes;
3. Maintain proper Workers' Compensation covering all persons Lessor engages and uses in performance of this Agreement; and
4. Provide Lessee reasonable evidence of the above.

(h) Reasonable customer satisfaction is of the utmost and critical importance and responsibility of the parties to this Agreement. All provisions of this Agreement must be interpreted and applied with this in mind and Lessor agrees to meet customer requirements.

(i) If Lessor engages a subcontractor (Subcontractor) for any portion of Lessor's responsibility under this Agreement, such engagement will not alter the relationship of Lessor to Lessee as an independent contractor, and it shall not establish any relationship or obligation between Lessee and Subcontractor. Lessor will continue to be solely responsible for compliance with and performance under the Agreement by its subcontractors. Moreover, Lessor will **INDEMNIFY, DEFEND AND HOLD HARMLESS** Lessee, its agents and servants from every claim, liability, penalty and fine (whether criminal or civil), judgment and expense (including attorney fees) incurred because of Subcontractor's conduct, acts and/or omissions.

(j) Lessor shall **INDEMNIFY, DEFEND AND HOLD HARMLESS** Lessee, along with its parent/subsidiary companies, principles, owners, directors, agents and employees, from all claims, lawsuits, liabilities, penalties and fines (whether criminal or civil), judgments, outlays and expenses (including attorney fees) resulting from Lessor's failure or the failure of Lessor's agents, employees, subcontractors or representatives to comply with any applicable laws and regulations, whether federal, state or local, or for personal injury or damage to property arising out of the performance under this Agreement, including the following:

- The release or discharge of hazardous waste, substance or material that occurs during transportation. Lessor will immediately assume all responsibility and liability for the proper and legal clean-up of the release or discharge.

- The failure to perform any of the terms, conditions, promises or covenants contained in this contract.

(k) Lessor shall have full responsibility for all payments, benefits and rights of its employees. Lessor must also ensure that its subcontractor(s) shall have the same responsibility for all payments, benefits and rights of their respective employees.

(l) Lessor is solely responsible for the cost of fuel, taxes, empty mileage, permits of all types, tolls, ferries, detention and accessorial services, base plates and licenses, and any unused portions of such items.

{01966367.DOCX / }

3

(m)  Lessor is not to display Lessee's name on any of Lessor's vehicles (tractors, trailers or otherwise)unless the Lessor's equipment is under the lease agreement. Immediately upon the release of equipment by operation of this agreement, Lessor will remove Lessee's name from its equipment.

(n)  Any limitation or exemption from liability in any tariff, receipt, bill of lading or other document issued by or on behalf of Lessor shall have no legal effect on this Agreement, and it shall not otherwise apply with respect to shipments tendered by or on behalf of Lessee, unless specifically agreed to (prior to shipment) in writing by Lessee and Lessor.

(o)  Lessor agrees to install, at its sole expense, a Global Positioning System (GPS) and Electronic Log System (ELS) capable of relaying near real time (not less than 30 minute updates) reports of vehicle location, vehicle status and driver hours of service, and making on-line access to this information available to Lessee on a 24 hour basis.

(p)  Lessor is not required to purchase or rent any products, equipment, or services from Lessee as a condition of entering this Agreement.

## 2. RECEIPTS OF GOODS:

(a) Lessor agrees, immediately upon receipt of shipment from Lessee or from a third-party on behalf of Lessee, to provide Lessee written receipt thereof, which shall be <u>evidence of receipt of such goods in good order and condition, unless otherwise noted upon the face of such receipt</u>. In the case of transportation of hazardous waste, substance or material, such written receipt shall be evidence of receipt of such waste, substance or material in a condition and manner that complies with all applicable county, state and federal laws and regulations. In the event Lessor elects to use a tariff, bill of lading, manifest or other form of freight receipt or contract, any terms, conditions and provisions of such document will be subject and subordinate to the terms, conditions and provisions of this Agreement, and in the event of a conflict between the terms, conditions and provisions of such document, this Agreement shall govern.

(b) Lessor agrees to obtain signed receipts, in a form satisfactory to Lessee, from all persons to whom delivery shall be made. Each receipt shall be retained by Lessor for at least two (2) years after each delivery. The receipts shall be available for inspection, copying and use of Lessee.

## 3. CARE AND CUSTODY OF MERCHANDISE:

(a) Lessor assumes the liability of an insurer of the prompt and safe transportation of all goods entrusted to its care. Lessor shall be responsible to Lessee for all loss, damage and delay of whatever kind and nature to all goods entrusted to Lessor while same remains in the care, custody or control of Lessor, or to any other person to whom Lessor may entrust said goods and before said goods are delivered or returned Lessee.

{01966367.DOCX / }

4

## 4. INSURANCE:

(a)  Pursuant to 49 U.S.C. 13906, Lessee is obligated to maintain insurance coverage for the protection of the public.  However, Lessor will be responsible for the following coverage and amounts:

- Lessee shall not be liable (a) for any damage to Lessor's equipment; or (b) for liability arising from the operation of Lessor's equipment while not in Lessee's service.  Any insurance Lessor contracts to carry under this agreement must be through a company rated __A__ or higher by **S&P or AM BEST**.  All insurances shall, by the terms of the policies or appropriate endorsements thereto: (a) be primary to, and in no respect excess or contributory to or contingent upon, any liability insurance provided by Lessee; (b) waive any right of subrogation against Lessor; (c) provide that all liability insurance shall first be applied against any claim against Lessee; (d)  provide that coverage may not be changed, altered or canceled by the issuing insurance company without twenty (20) days prior written notice to Lessor and Lessee.  Lessee shall be given the opportunity to review each policy of insurance to assure it is sufficient.

- Lessor agrees to carry through insurers approved by Lessee, (a) non-trucking liability insurance providing a minimum One Million dollars ($1,000,000.00) per occurrence combined single limit Bodily Injury and Property Damage liability coverage, (b) workers compensation, or occupational accident insurance if Lessor is a sole proprietor or partner signatory, and a minimum of statutory workers compensation on an employee of Lessor's.  Lessee shall be named as an additional insured on all applicable policies and will be furnished a Certificate of Insurance indicating the foregoing coverage.

- Bobtail insurance in an amount not less than $20,000 per tractor.  Bobtail insurance is defined as insurance covering equipment not under load.

- Lessor agrees to carry cargo, personal injury, death, equipment and general insurance and will promptly reimburse Lessee for the value of any goods (including containers) lost or destroyed during the period of Lessor's responsibility under clause (3) (a). All such insurance shall name Lessee (Circle Bar A Inc.) as additional insured.

- Lessor will arrange with its broker and/or insurance carrier(s) for notice of coverage and limits to be sent directly to Lessee, as well as cancellation notices and amendments to coverage(s).

## 5. ASSIGNMENTS:

This contract cannot be assigned by Lessor without the prior written consent of Lessee.

{01966367.DOCX / }

5

## 6. COMPENSATION, COMMODITIES, TERRITORY:

(a) Acceptable rates and charges, rules and regulations, a description of the commodities to be transported, and the points of transportation are to be furnished to Lessee, the FMCSA and other regulatory bodies as may be required and as set forth in the rate schedule attached as Addendum 1, and made a part of this Agreement. Lessee agrees to pay Lessor, as full compensation for services, the rates and charges set forth in the Addendum and within sixty (60) days of invoice date.

(b) This agreement is to become effective upon signature by Lessee and Lessor.

## 7. CONFIDENTIALITY:

Lessor shall treat as confidential, and not disclose to any third-party, the terms of this agreement or any information concerning the Lessee's business, including information regarding suppliers, shipments and/or customers without, in each instance, obtaining Lessee's prior written consent.

## 8. NOTICES:

All notices given pursuant to this agreement shall be given in writing by certified mail, return receipt requested, and addressed to the signatories to this Agreement (as indicated below).   Lessor shall notify Lessee by telephone or otherwise immediately of any accident involving Lessor's employees or equipment.  Lessor shall cooperate in the investigation of each accident.

## 9. SAFETY AND TRAINING:

Lessor shall adopt and ensure compliance, by all its employees and drivers, the safety and training guidelines defined in the Circle Bar A Operator's Manual.  Lessor shall ensure that all employees and agents are provided a copy of this document prior to tender of freight under this Agreement. Each employee or agent must provide a signed receipt and acknowledgement of receipt, reading and understanding of the Circle Bar A Inc. Safety Manual. This acknowledgement is printed on the last page of the manual, and Lessor must keep a signed copy with each employee/driver's file.

## 10. APPLICABLE LAW:

In the event a dispute arises regarding this Agreement or any work hereunder, the parties agree to venue in County or District Court in San Antonio, Bexar County, Texas.

{01966367.DOCX / }

6

An original and two copies of this Agreement shall be signed by the parties. Lessor shall keep the original and shall place a copy on the equipment during the period of the lease. Lessee shall keep the other copy.

By signing this document, the parties confirm that they read and understood the terms and conditions. If any part of the document is not understood, Lessor shall review the Agreement with an agent or attorney that can fully explain it.

This agreement is binding upon the following listed equipment:

Truck Make Freightliner,
Model_ CL4
Year 2004,
VIN# 4FUJA6CK74LM95618.

Truck International
Year 2007
VIN# 2HSCNSBR07C366279

Truck International
Year 2005
VIN#2HSCEAHR05C036818

Truck International
Year 2007
VIN#2HSCNSBR07C366251

By: _Richard Esser_____
Lessor:
Address: 851 cherry St Culde, TX. 78861
Email Address: _ressor33@yahoo.com_____

By: _____
Lessee:
Circle Bar A Inc.
PO Box 268
Leming, Texas 78050
Email Address: Waylon@circlebara.com

(01966367.DOCX / )

7

# Addendum One

As total compensation under this contract, Lessee agrees to pay Lessor eighty-two (82) percent of all earnings of said truck. This is calculated by adding the total of all line haul rates plus any Demurrage for all loads hauled.

In the case of fuel surcharges, Lessee agrees to pay Lessor one-hundred (100) percent of any applicable fuel surcharges that may have been collected as a result of the operation of Lessors' equipment.

{01966367.DOCX / }

8

# Addendum One

As total compensation under this contract, **Lessee** agrees to pay **Lessor** eighty-two (82) percent of all earnings of said truck. This is calculated by adding the total of all line haul rates plus any Demurrage for all loads hauled.

In the case of fuel surcharges, **Lessee** agrees to pay **Lessor** one-hundred (100) percent of any applicable fuel surcharges that may have been collected as a result of the operation of **Lessors'** equipment.

**Addition of truck          07/11/13**

**1998 Peterbilt          1XP5DB9X5WD464407          Truck 1276**

**Lessee**                    **Lessor**

{01966367.DOCX / }

8

# EXHIBIT F

1

---

EXAMINATION UNDER OATH OF CRAIG REID GOECKERITZ

JANUARY 15, 2015

---

EXAMINATION UNDER OATH OF of CRAIG REID GOECKERITZ, produced as a witness at the instance of Russell Bowman, Drought Transportation, Inc., and duly sworn, was taken on January 15, 2015, from 9:56 a.m. to 10:19 a.m., before Janis Laws, Certified Shorthand Reporter in and for the State of Texas, reported by method of machine shorthand, at the Law Offices of Ted Rodriguez, 201 North 5th Street, Carrizo Springs, Dimmit County, Texas.

It is stipulated and agreed by and between Counsel and the respective parties hereto that the Examination Under Oath of the Witness named in the caption hereto, may be taken at this time and place, pursuant to Agreement, and that the said Examination Under Oath, or any part thereof, when so taken, may be used on the trial of this case the same as if the Witness were present in court testifying in person.

\* \* \* \* \* \*

2

A P P E A R A N C E S

BOWMAN & STELLA
800 W. Airport Freeway, Suite 860
Irving, Texas   75062
BY:  MR. RUSSELL J. BOWMAN

ATLAS & HALL, L.L.P.
124 N. East Street
Uvalde, Texas   78801
BY:  MR. CHARLES W. DOWNING

LAW OFFICES OF TED RODRIGUEZ
201 North 5th Street
Carrizo Springs, Texas   78834
BY:  MR. TED RODRIGUEZ

CRAIG REID GOECKERITZ,
      The Witness;

RICHARD ESSER,
      Also Present; and

JANIS LAWS,
      Certified Shorthand Reporter and
      Registered Professional Reporter
      in and for the State of Texas

* * * * * *

SAN ANTONIO COURT REPORTING, FIRM NO. 175
555 E. BASSE ROAD, SUITE 205
SAN ANTONIO, TEXAS  78209  (210) 227-1525

3

I N D E X

PAGE

STIPULATIONS...................................................1
APPEARANCES...................................................3


EXAMINATION                                                PAGE

CRAIG REID GOECKERITZ

Direct Examination by Mr. Bowman..............................4

EXHIBITS                                                   PAGE

1    65269 - 10/7/14 Circle Bar A Check List...............7

2    Ticket No. 16958 - Weatherford Fracturing Technologies.11

3    65270 - 10/31/14 Circle Bar A Check List.............12

4    9/25/14 Bill of Lading...............................15

5    66468 10/3/14 Circle Bar A Check List................16

6    Load Ticket..........................................17

                                                           PAGE

REPORTER'S CERTIFICATE.......................................21

-o-O-o-

SAN ANTONIO COURT REPORTING, FIRM NO. 175
555 E. BASSE ROAD, SUITE 205
SAN ANTONIO, TEXAS  78209  (210) 227-1525

4

CRAIG GOECKERITZ,

having been first duly sworn, testified as follows:

DIRECT EXAMINATION

Q    (BY MR. BOWMAN) Could I get you to state your full name for the record, please?

A    Craig Reid Goeckeritz.

Q    Mr. Goeckeritz, my name's Russell Bowman.  I'm an attorney for Century Insurance.  I'm here to take your Examination Under Oath.  It's in connection with the auto accident you were involved in with Adrian Martinez.

A    Uh-huh.

Q    I always like to ask people this:  Have you ever given one of these Examinations Under Oath before?

A    No.

Q    Have you ever given a deposition before?

A    No.

Q    Okay.  First time.  Basically, what this is, I'll be asking you some questions pertaining to some insurance coverage issues.  As you can see, the court reporter is taking down everything we say, so if you'll give all verbal answers to my question, like you're doing.  Try to avoid answering with a nod of the head or an "uh-huh" or "huh-uh" since they're difficult for her to distinguish, and I'll try to make my questions as clear as I can.

If I ask you something and it just doesn't seem

SAN ANTONIO COURT REPORTING, FIRM NO. 175
555 E. BASSE ROAD, SUITE 205
SAN ANTONIO, TEXAS  78209  (210) 227-1525

to be making sense or registering, if you'll just stop and tell me, I'll be happy to rephrase it. And then, finally, I don't think we're going to be here very long, but if you need to take a break, phone call, tend to emails, what have you, use the restroom, just stop and tell me and I'll be happy to give you a break. With that in mind, we can go ahead and get started, if you're ready.

MR. RODRIGUEZ: Russell, I know --

MR. BOWMAN: Yeah.

MR. RODRIGUEZ: -- there's a Reservation of Rights, but he does have a defense lawyer. He knows about this. Right? I think Bubba --

MR. BOWMAN: Yeah. I know -- I think I sent the Reservation of Rights Letter out and I think I copied Mr. Goeckeritz on it, I believe.

Q    (BY MR. BOWMAN) Did you ever get a Reservation -- or did you ever receive any letter from me?

MR. RODRIGUEZ: Sure, but does his lawyer have one, the defense lawyer?

MR. BOWMAN: Oh, that -- I'd have to check.

MR. RODRIGUEZ: Okay.

MR. BOWMAN: I can't remember if I sent him one or not or if the adjuster did, but let me make a note to check on that.

MR. RODRIGUEZ: Because -- I understand the

6

issue he would have, but he may have wanted to be here, so --

MR. BOWMAN:  Yeah.  I don't know -- I don't know if he got one or not.  Sometimes they won't -- they just don't want the defense lawyer involved in coverage.  They want him just to -- It doesn't matter if he's defending in a way that makes it covered or not.  They just want him to defend the insured, but I will check on that.

MR. RODRIGUEZ:  Right.  And -- Because his duty is to my client, so --

MR. BOWMAN:  Correct.  Correct.

MR. RODRIGUEZ:  All right.

Q    (BY MR. BOWMAN) Okay.  First off, could -- what's your current address?

A    333 Silver Buckle, Schertz, Texas.

Q    And how do you spell that?

A    S-C-H-E-R-T-Z.

Q    And your ZIP code there?

A    78154.

Q    And your telephone number?

A    (210)380-3919.

Q    And your date of birth?

A    July 29th, 1967.

Q    And your Texas driver's license number?

A    23066131.

Q    And then what's the last three digits of your

7

Social Security number, just the last three?

A    7612.

Q    Okay.  Actually, the last four, but -- okay.

A    Okay.

Q    Close enough.  Now, where are you currently employed?

A    I'm currently, right now, on workman's comp.

Q    And, obviously, dealing with an on-the-job injury. Where were you employed just prior to that injury?

A    Drought Transportation.

Q    And what's your job or position with Drought?

A    Driver.

Q    And by "driver," I take it you're an 18-wheeler driver hauling various loads?

A    Frac sand.

Q    I'm sorry.  What was that?

A    Frac sand.

Q    And by that, you'll haul various truckloads of sand at various sites that's used in fracking operations?

A    Correct.

Q    Okay.  Now, what I wanted to do --

MR. BOWMAN:  That's just extras there, Ted, for you to follow along.

Q    (BY MR. BOWMAN) -- is to kind of go over some loads you did on September the 24th, 25th, and 26th.

(Exhibit No. 1 marked)

8

THE WITNESS:  Okay.

Q   (BY MR. BOWMAN) Let me show you first -- Let me show you first what I've marked as Exhibit 1.  It's a document entitled Circle Bar A Checklist.  It's got a number in the upper right-hand corner, 65269, and ask you first if you could look at that document and tell me if you recognize it.

A   Yes.

Q   And what is Exhibit 1?

A   It's just a checklist we have to fill out on every load.

Q   And the information that's on Exhibit 1, would that be information that you, yourself, would fill out?

A   Yes.

Q   Okay.  And so the handwriting there on Exhibit 1 is your handwriting?

A   Yes.

Q   Okay.  And it looks like this related to a load that you picked up on September the 24th, around ten o'clock in the morning, at Agua Dulce?

A   Yes.

Q   And what was the load you were picking up there?

A   Sand.

Q   Sand used for fracking operations?

A   Yes.

Q   And the load that you were picking up there, who were

9

you picking that up for?

A     Circle Bar A gave me the dispatch.

Q     And how did that work as far as you receiving the dispatch? Would you have somebody from Circle Bar A contact you or would it be someone from Drought telling you, "Hey, we need you to go to Agua Dulce to pick up a load"?

A     We got all our dispatches from Circle Bar A dispatch.

Q     And, now, this particular form that's Exhibit 1, was this something that Circle Bar A required of you?

A     Yes.

Q     All right. So you went and picked up this load for Circle Bar A and they'd tell you where you needed to take it to?

A     Yes.

Q     And on this particular load on the 24th, where was it you were taking it to?

A     Well, that one, Catarina.

Q     And it looks like, based on Exhibit 1, you arrived at the unloading destination at about 1:30 in the afternoon on September the 24th?

A     Uh-huh.

Q     I'm sorry. That's a "yes"?

A     Yes.

Q     And then it looks like that load started to be unloaded at about 8:00 in the evening on September the 24th?

10

A    Yes.

Q    Now, for that, roughly, 6-1/2-hour time frame, what did you do while you were waiting to be able to get your -- the sand unloaded?

A    I was waiting in my sleeper, in the back.

Q    And it looks like once your truck was up, got unloaded within about an hour and a half so that it was completely unloaded about 9:45 in the evening on September the 24th?

A    Yes.

Q    And that truck that you used on this shipment on the 24th, which truck was that?

A    1228.

Q    And do you know what type of truck -- That 1228, that's referring to a truck number?

A    Yes.

Q    And do you know what type of truck Truck 1228 is?

A    A Freightliner.

Q    And do you know what year Freightliner?

A    I couldn't tell you.

Q    And, now, after you got your shipment of sand unloaded -- or let me ask you this first.  Strike that.  On that form that's Exhibit 1, it's got "BOL" with a number and it says 16958.  I take it that's referring to the Bill of Lading for that shipment?

11

A    Correct.

Q    Okay.  And then what I've marked as Exhibit 2 --

(Exhibit No. 2 marked)

Q    (BY MR. BOWMAN) -- to your examination, is that the Bill of Lading No. 16958 for the shipment you transported on September the 24th of 2014?

A    Yes.

Q    Okay.  Now, after you had your shipment unloaded on the 24th, did you stay there in Catarina or did you have another load that you had to go get to?

A    After we get emptied, they -- Dispatch sends us -- or tells us where to go or where to stage at.

Q    And when you say "where to stage at," what do you mean by that?

A    Just where -- where the truck should be at to load at --

Q    Okay.

A    -- for your next load.

Q    And by the time the load on the 24th of September was finished, had you already received another dispatch of where you were to go next?

A    I didn't understand that.

Q    Yeah.  Let me rephrase it.  By the time the shipment of sand that you transported on September the 24th of 2000 -- 2014, by the time that shipment was unloaded, at that point had

12

you been dispatched to go off somewhere else for another load?

A    Let me ask -- or brief -- ask you, just so I'm clear --

Q    Let me rephrase it.  I'll try to make it -- I'll make -- I think I'm making it more complicated than I have to.  At the time the truckload of sand that you shipped on September the 24th of 2014 was unloaded, once that's unloaded, did you have anywhere, at that point, that you needed to go to next for another load?

A    Not until Dispatch sent me my next -- where I was supposed to be, like my staging point.

Q    Now, did you receive that subsequent dispatch on September the 24th?

A    Yes, after I was empty.

Q    And where were you dispatched to go next?  This may help you.

(Exhibit No. 3 marked)

Q    (BY MR. BOWMAN) Let me show you what I've marked as Exhibit 3 to your examination.

A    Uh-huh.

Q    And do you recognize that document?

A    Yes.

Q    And is that a form you filled out in connection with a load you transported on September the 25th of 2014?

A    Yes.

13

Q    And was this another load that you were transporting for Circle Bar A?

A    Yes.

Q    And was this another truckload of sand for fracking?

A    Yes.

Q    And it looks like this load of sand, you picked that up in Hondo, Texas?

A    Yes.

Q    Okay.  So, obviously, once you had finished your load on September the 24th in Catarina, you were subsequently dispatched to go pick up a truckload of sand in Hondo?

A    Correct.

Q    And based on Exhibit 3, it looks like you were transporting that truckload of sand to Carrizo Springs?

A    Correct.

Q    And then going through this truckload of sand that you hauled on September the 25th of 2014, it looks like you arrived in Hondo at about 12:10 in the afternoon so that the truck could be loaded up with sand?

A    No.  I actually arrived there the -- the night before.

Q    Oh, okay.  So once you were dispatched from Catarina to Hondo, you drove to Hondo on the evening of September the 24th?

A    Correct.

SAN ANTONIO COURT REPORTING, FIRM NO. 175
555 E. BASSE ROAD, SUITE 205
SAN ANTONIO, TEXAS  78209  (210) 227-1525

14

Q    And when you got to Hondo that evening, did you just sleep in the sleeper portion of your cab?

A    Correct.

Q    And then the next day, on September the 25th, you arrived at your destination in Hondo, where you were to have the truck loaded up with the sand?

A    Say that again.

Q    Yeah.  This might even be easier.  When you went to Hondo on September 24th as part of that subsequent dispatch --

A    Uh-huh.

Q    -- did you just park your truck there at the place where you were to pick up your next load of sand?

A    Yes.

Q    Okay.  And so, basically, you're there on the next day, September the 25th, 2014, looks like sometime around 12:20 in the afternoon that day, and they start to load your truck with another load of fracking sand?

A    That's actually 12:10 in the morning.

Q    Okay.

A    And then 12:20 in the afternoon is when I -- I -- Strike that.

Q    I think I'm with you.  Let me rephrase it.  I'm sorry.  So it looks like at a few minutes after midnight on September the 25th of 2014, your truck's getting loaded with the fracking sand?

15

A    No.  We -- or at that particular time, the -- That's all I know is, I got there at -- right around midnight on the 25th and, yes, that was the time that they started loading me --

Q    Okay.

A    -- at 12:00 -- 12:20 in the afternoon.

Q    Okay.  And then from -- from there, it looks like you arrived at Carrizo Springs with your load at approximately 2:45 in the afternoon on September the 25th?

A    Correct.

Q    And it looks like, based on Exhibit 3, your truckload of sand was unloaded at around -- or the unloading was completed around 8:00 in the evening on September the 25th, 2014?

A    Yes.

Q    And, now, this shipment that you did on September the 25th, it was under -- or the Bill of Lading applicable to that was a Bill of Lading No. 62986?

A    Yes.

(Exhibit No. 4 marked)

Q    (BY MR. BOWMAN) And then is what I've marked as Exhibit 4 the Bill of -- that Bill of Lading No. 62986?

A    Yes.

Q    And, now, once that load -- or once that truckload of sand had been unloaded there on September the 25th of 2014, did

you have anywhere at that point to go next, as far as another load?

A    Not at that point.

Q    And so at that point, are you just staying there in the Carrizo Springs area, waiting for another dispatch?

A    No.  I had to go back to San Antonio to pick up my trailer or a different trailer.

Q    And did you stay in the San Antonio area on the evening of September the 25th?

A    No.

Q    Okay.  So you go back to San Antonio, pick up your trailer.  Where did you go from there?

A    They sent me a dispatch to --

Q    This may help you.

A    Yeah.

(Exhibit No. 5 marked)

Q    (BY MR. BOWMAN) And then I'll complete it, but let me show you this first.  Let me show you what I've marked as Exhibit 5, and tell me, first, if you recognize that.

A    Yes.

Q    And is Exhibit 5 the Circle Bar A Checklist you filled out for a load which you did for them on September the 26th of 2014?

A    Yes.

Q    And so looking at that, it looks like when you went

to San Antonio on the evening of September 25th of 2014 to pick up a different trailer, at some point there you were dispatched by Circle Bar to go to Cleburne, Texas, to pick up another load?

A    Correct.

Q    And so this load in Cleburne, was this another load of fracking sand?

A    Yes.

Q    And this was a load you were picking up and transporting for Circle Bar A?

A    Correct.

Q    And it looks like this -- for this load that you hauled on September 26th of 2014, it was under Bill of Lading 584207?

A    That's what it looks like.

(Exhibit No. 6 marked)

Q    (BY MR. BOWMAN) And is what I've marked as Exhibit 6 -- does that look to be a copy of Bill of Lading 584207?

A    Yes.

Q    And this load that you hauled on September the 26th, it looks like that load of sand was finished unloading at about 8:45 in the evening on September the 26th of 2014?

A    8:45.

Q    So that's correct, then?

18

A    Yeah, right there.

Q    Okay.  So at about 8:45 in the evening on September 26th of 2014, you've gotten that truckload of sand -- that shipment was complete as of 8:45 P.M. on September 26th, 2014?

A    Correct.

Q    And it looks like that shipment you were delivering to Carrizo Springs from Cleburne?

A    Correct.

Q    And, now, down towards the bottom of Exhibit 5, it's got, "Wait for stage to finish."  That handwriting there, that's your handwriting?

A    No.  That's the sand coordinator's.

Q    And do you know what that may be referring to there?

A    That -- The -- The demerge time.  That's the explanation of demerge.

Q    Now, as far as the accident with Mr. Martinez, did that happen after your load on September 26th, 2014, had been unloaded?

A    Yes.  I was empty.

Q    Now, once -- Okay.  Once your truckload is empty there at, roughly, 8:45 in the evening on September 26th of 2014, did you have a dispatch at that point to go somewhere else to pick up another load or were you waiting for a dispatch?  Just kind of tell me what the situation was back

then.

A    I got a dispatch sending me back out to Agua Dulce.

Q    And I take it this dispatch, you were to pick up another truckload?  I'm sorry.

A    I can't be sure if it was Agua Dulce.  It might have been George West.  One of those two.

Q    Okay.  So either way, you -- once your truckload of sand was finished on September 26th of 2014, you had been dispatched by Circle Bar to go to another destination to pick up another truckload of sand?

A    Correct.

Q    And was it -- Were you on your way to picking up that truckload of sand when you had the accident with Mr. Martinez?

A    Yes.

Q    And this additional truckload of sand that you were on your way to pick up at the time of the accident with Mr. Martinez, this was a job you'd been dispatched to by Circle Bar A?

A    Yes.

MR. BOWMAN:  Okay.  I think that's all I have for you.

(EXAMINATION UNDER OATH CONCLUDED AT 10:19 A.M.)

CHANGES AND SIGNATURE

PAGE    LINE            CORRECTION AND REASON

\_\_\_\_\_  \_\_\_\_\_  _____

IF YOU DO NOT WISH TO MAKE ANY CHANGES, PLEASE NOTE "NONE"
ABOVE.

        I, CRAIG REID GOECKERITZ, have read the foregoing
Examination Under Oath and hereby affix my signature that same
is true and correct, except as noted above.



                                    _____
                                    CRAIG REID GOECKERITZ

THE STATE OF TEXAS  )
COUNTY OF GUADALUPE )

        Before me, _____, on this the \_\_\_\_\_
day of _____, 2015, personally appeared
CRAIG REID GOECKERITZ, known to me (or proved to me
under oath or through _____) to be the person whose
name is subscribed to the foregoing instrument and acknowledged
to me that they executed the same for the purposes and
consideration therein expressed.


                                    _____
                                    Notary Public in and for
                                    the State of Texas
My commission expires: _____

21

                    ---------------------------------------------------------

                    REPORTER'S CERTIFICATION FROM THE

                    EXAMINATION UNDER OATH OF CRAIG REID GOECKERITZ

                    JANUARY 15, 2015

                    ---------------------------------------------------------

        I, JANIS LAWS, Certified Shorthand Reporter and

Notary Public in and for the State of Texas, hereby certify to

the following:

        That the witness, CRAIG REID GOECKERITZ, was

duly sworn by the officer and that the transcript of the

Examination Under Oath is a true record of the testimony

given by the Witness;

        That the Examination Under Oath transcript was

submitted on January 26, 2015, to the witness or to the

attorney for the witness for examination, signature and

returned to me by February 15, 2015;

        That the amount of time used by each party at

the deposition is as follows:

        Russell J. Bowman - (23 minutes)

22

That pursuant to information given to the deposition officer at the time said testimony was taken, the following includes counsel for all parties of record:

Russell J. Bowman, Attorney for Drought Transportation;

Charles W. Downing, Attorney at Law;

Ted Rodriguez, Attorney at Law.

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Certified to by me this ___ day of _____, 2015.

JANIS LAWS, Texas CSR #3460
Expiration Date:  12-31-2016
San Antonio Court Reporting
Firm Registration No. 175
555 E. Basse Road, Suite 205
San Antonio, Texas  78209
(210) 227-1525

23

That $_____ is the Examination officer's charges to Russell J. Bowman for preparing the original Examination Under Oath transcript and any copies of exhibits;

Certified by me this _____ day of _____, 2015.

JANIS LAWS, Texas CSR #3460
Expiration Date:  12-31-2016
San Antonio Court Reporting
Firm Registration No. 175
555 E. Basse Road, Suite 205
San Antonio, Texas  78209
(210) 227-1525

ORIGINAL NOT VALID
UNLESS SIGNED BY REPORTER



# Circle Bar A Check List

65269

**P.O. Box 268**
**Leming, TX 78050**
**(210) 626-2272 Office**

58110£
10-7-14

**Bill To:** Weatherford

**BOL#** 16958

| | |
|---|---|
| Date 9-24-14 | Driver Craig Goeckeritz |
| Truck 1228 | Trailer 706 |
| Service Company Weatherford | Pick Up City Agua Dulce |
| Well Name PGE Browne | Delivery City Catarina |
| Operator Chesapeake | Mileage 154 |
| Product 100 mesh | Odometer Begin 209990 |
| Weight 48,280 | Odometer End 210144 |
| Appointment Date & Time 9-24-14 ASAP | Appointment Date & Time 9-24-14 ASAP |
| Arrived to Load Date & Time 9-24-14 10Am | Arrived Loc/Staging Area Date & Time 9-24-14 1:30PM |
| Start Loading Date & Time 9-24-14 10:05Am | Start Unloading Date & Time 9-24-14 8:00PM |
| Finished Loading Date & Time 9-24-14 10:15Am | Finish Unloading Date & Time 9-24-14 9:45PM |
| Total Hours .25 | Total Hours 8.25 |
| Mover # 87379 | Compartment #1 |

**Sand Coordinator Signature:**

**Explanation of Demurrage** Frac Started late, had to wait for room to offload

RECEIVED
SEP 2011

EXHIBIT
1

Ticket #:    16958



**Weatherford**

# Fracturing Technologies

# 100 MESH

| | | | |
|---|---|---|---|
| Customer Name: | CHESAPEAKE ENERGY | | |

**Scale Weights**

| | |
|---|---|
| Lease Name: | BROWNE |

Weighed On Scale    2

| | |
|---|---|
| Well Name: | 2 &3 H |

| | | | |
|---|---|---|---|
| 76660 | lb | GROSS | 9/24/2014 10:14:21 AM |
| 28380 | lb | TARE | 9/24/2014 10:10:42 AM |
| 48280 | lb | Net | |

| | |
|---|---|
| Ship From Location: | 6510 East Hwy 44, Alice TX 78332 |
| Ship To Location: | CARRIZO SPRINGS |
| Shipped By: | EDWARD ORDONEZ |
| Date Shipped: | 9/24/2014 |

**Silo Drafts**

| Silo | Gross | Tare |
|---|---|---|
| 8 | 63760 | 28380 |
| 8 | 76660 | 63760 |

Driver Signature:

X

| | |
|---|---|
| Trucking Company: | CIRCLE BAR A |
| Truck #: | 1228/706 |
| Driver Name: | CRAIG |
| Stage: | 1 |
| Stage Long:  167.0019 | Stage Lat:    90.0001 |

Operator Signature:

X

M-87379
C#1

RECEIVED
SEP





EXHIBIT

2



# Circle Bar A Check List    65270

**P.O. Box 268**
**Leming, TX 78050**
**(210) 626-2272 Office**

5865
10/3/14✓

**Bill To:** Weatherford          **BOL#** 62986

| | |
|---|---|
| Date  9-25-14 | Driver  Craig Goeckeritz |
| Truck  1228 | Trailer  706 |
| Service Company  Weatherford | Pick Up City  Hondo |
| Well Name  TOC Quingy 401 | Delivery City  Carizo Springs |
| Operator  Sundance | Mileage  106 |
| Product  100 mesh | Odometer Begin  210307 |
| Weight  48,020 | Odometer End  210,413 |
| Appointment Date & Time  9-25-14 ASOP | Appointment Date & Time  9-25-14 2PM |
| Arrived to Load Date & Time  9-25-14  12:10 | Arrived Loc/Staging Area Date & Time  9-25-14 2:45 PM |
| Start Loading Date & Time  9-25-14  12:20 | Start Unloading Date & Time  9-25-14  7:10 PM |
| Finished Loading Date & Time  9-25-14  12:30 | Finish Unloading Date & Time  9-25-14  8:00 PM |
| Total Hours  .25 | Total Hours  5.15  (3.25) |
| Mover #  M-16268 | Compartment  #2 |
| Sand Coordinator Signature: | |
| Explanation of Demurrage  Wireline issue | EXHIBIT  3 |

RECEIVED
JM

## Bill of Lading

Origin: Rail Transloading Resources, Inc
1035 Carter Ave
Hondo, TX 78861

From: Interstate Energy Partners
Arespt 3900 N.10th Suite 1010
McAllen, TX 78501

Consigned to: Weatherford
19685 IH 37 South
San Antonio, TX 78264

Ship To: Sundance
Tecquingy 401 H
, TX

BOL #:              62986
Supplier Order #:   66467
Customer PO #:      90001100
Load Start Date:    9/25/2014 12:03 PM
Load End Date:      9/25/2014 12:30 PM

Carrier:    Circle Bar A
Driver:
Truck:      1228
Trailer:    706
F.O.B.:     Collect

**EXHIBIT 4**

Product:        100 Mesh
Description:    IEP 100 Mesh

Scale Ticket

ID #:             66467
Inbound Time:     9/25/2014 12.03 PM
Outbound Time:    9/25/2014 12.30 PM

Gross:    76,640
Tare:     28,620
Net:      48,020

| Rail Car | Amount | Inspection Lot | Rail Car | Amount | Inspection Lot |
|---|---|---|---|---|---|
| AOKX 181503 | 48,020 | | | | |

M-16268
CX 2

WARNING: Contains Free Silica - Do Not Breathe Dust
For industrial use only. Never use for sandblasting.
See Material Safety Data Sheet for detailed information.

Shipper Certification:
This is to certify that the above named materials are properly classified, described, packaged, marked and labeled, and are in the proper condition for transportation, according to the applicable regulations of the Department Of Transportation. (DOT).

Carrier Certification:
Carrier acknowledges receipt of material and packaging in proper condition for shipment. Any damages and or defects in material and packaging not noted before shipment leaves the facility is the responsibility of the carrier.

Print Name:  J. Garcia
Signature:   G. Garcia
Date:        9/25/14

Print Name:  Greg Goeckeritz
Signature:
Date:        9-25-14

RECEIVED
SEP 2014



# Circle Bar A Check List

66468

P.O. Box 268
Leming, TX 78050
(210) 626-2272 Office

57851
10/3/14

**Bill To:** Weatherford

**BOL#** 584287

| | | |
|---|---|---|
| Date | 9-26-14 | |
| Truck | 1228 | |
| Service Company | Weatherford | |
| Well Name | Joc Quigny 401 H | |
| Operator | Sundance | |
| Product | 100 Mesh | |
| Weight | 48,000 | |
| Appointment Date & Time | 9-26-14 ASAP | |
| Arrived to Load Date & Time | 9-26-14 3:30AM | |
| Start Loading Date & Time | 9-26-14 10:30am | |
| Finished Loading Date & Time | 9-26-14 10:45AM | |
| Total Hours | 7.25 | |
| Mover # | 16268 | |

| | | |
|---|---|---|
| Driver | Craig Goeckeritz | |
| Trailer | 104 | |
| Pick Up City | Cleburne | |
| Delivery City | Carrizo Springs | |
| Mileage | 351 | |
| Odometer Begin | 210780 | |
| Odometer End | 211131 | |
| Appointment Date & Time | 9-26-14 ASAP | |
| Arrived Loc/Staging Area Date & Time | 9-26-14 5:15PM | |
| Start Unloading Date & Time | 9-26-14 7:40 PM | |
| Finish Unlaoding Date & Time | 9-26-14 8:45PM | |
| Total Hours | 3.5 | |
| Compartment | #1 | |

**Sand Coordinator Signature:**

**Explanation of Demurrage**

Wait for stage to finish

**EXHIBIT**

5

... property named herein, and is intended solely for filing or record.

Subject to the classifications and lawfully filed tariffs in effect on the date of receipt by the carrier of the property described in the Original Bill of Lading. ... property described below in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned, and destined as indicated below, which said carrier (the word carrier being understood throughout this contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination, if on its route, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed as to each carrier of all or any of said property, over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the terms and conditions of the Uniform Domestic Straight Bill of Lading set forth (1) in Uniform Freight Classification in effect on the date hereof, if this is a rail or a rail-water shipment, or (2) in the applicable motor carrier classification or tariff if this is a motor carrier shipment. Shipper hereby certifies that he is familiar with all the terms and conditions of the said bill of lading set forth in the classification or tariff which governs the transportation of this shipment, and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.

FROM: UNIMIN CORPORATION — AT: CLEBURNE, TEXAS

| SHIP TO | AGENT'S NO. | CUSTOMER ORDER NO. | OUR ORDER NO. | SHIP DATE | SHIP VIA |
|---|---|---|---|---|---|
| 34287 | | 11476301 | 51005747 | 9-26-14 | TPNT |

CONSIGNED TO: WEATHERFORD INTERNATIONAL INC

DESTINATION: C/O RAIL LINK INTL. SAN ANTONIO — STATE: TX — COUNTY: BEXAR

CARRIER

ICC CONTRACT NO.

ROUTE

DELIVERING CARRIER: CUSTOMER TRUCK CBR — VEHICLE OR CAR INITIAL & NO. 1722-144

| Qty. Ordered | UOM | Kind of Package, Description of Articles, Special Marks and Exceptions | No. of Packages | HM | Weight (Subject to Correction) | Class or Rate | Ch Co |
|---|---|---|---|---|---|---|---|
| 1 | TL | UNIFRAC 100 MESH - BULK | | | | | |

EXHIBIT 6

25-13

SHIPPER'S SPECIAL INSTRUCTIONS:

| | |
|---|---|
| GROSS | 76520 lb G |
| TARE | 28520 lb T |
| NET | 48000 lb N |

...S FOR 1500 TONS
SUNDANCE TOCQUIGNY 401H VOLUME
I UNDERSTAND THAT AS THE DRIVER AND HAULER FOR THIS LOAD
I HAVE PRESENTED A CLEAN AND SAFE TRAILER FOR LOADING AND
THE LOAD IS ACCEPTED IN GOOD ORDER.
SIGNED: ______ 10:39 AM 09/26/2014
DRIVER/AGENT FOR TRUCKING COMPANY

3

24.00 tn N

Subject to Section 7 of conditions of applicable bill of lading, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement: The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

UNIMIN

Per ______ (Signature of Consignor)

| Vehicle or Car Initial & No. | Seal Number | Gross | Weight (Subject to Correction) Tare | Net |
|---|---|---|---|---|

RECEIVED SEP 30 2014 By ______

MV 16268
C#1

If charges are to be prepaid, write or stamp here, "To be Prepaid."

Received $ ______ to apply in prepayment of the charges on the property described hereon.

Agent or Cashier.

Per ______ (The signature here acknowledges only the amount prepaid.)

Charges Advanced:

$ ______

†This is to certify that the above named articles are properly classified, described, packaged, marked and labeled, and are in proper condition for transportation, according to the applicable regulations of the Department of Transportation.

*If the shipment moves between two ports by a carrier by water, the law requires that the bill of lading shall state whether it is "carrier's or shipper's weight."

†Shipper's imprint in lieu of stamp; not a part of Bill of Lading approved by the Department of Transportation.

NOTE—Where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property.

The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding.

IMPORTANT - This section must be completed by customer
READ HEALTH HAZARD WARNING BELOW
RECEIVED BY ______
AND DATE OF DELIVERY ______

UNIMIN CORPORATION
SHIPPER ______ PER ______
AGENT CBR PER ______

CORPORATE OFFICES:
258 ELM STREET
NEW CANAAN, CT 06840
(203) 966-8880

**HEALTH HAZARD WARNING:** CONTAINS FREE SILICA. DO NOT BREATHE DUST - Prolonged inhalation can cause delayed lung injury including SILICOSIS, a progressive, disabling and sometimes fatal lung disease. IARC has determined that crystalline and microcrystalline silica inhaled from occupational sources can cause cancer in humans. Risk of injury is dependent on the duration and level of exposure.
Do not use as a dry abrasive blasting agent. Follow OSHA or other relevant safety and health standards for the form of crystalline silica called quartz. Current material safety data sheet containing safety information is available and should be consulted before opening. Since empty containers retain product residue, follow label warnings even after container is empty.