UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Sentry Select Insurance Company,<br>Plaintiff<br><br>v.<br><br>Drought Transportation, LLC, Craig R<br>Goeckeritz, and Circle Bar A, Inc.,<br>Defendants | )<br>)<br>)<br>)<br>) Civil Case No. 15-cv-890 (RCL)<br>)<br>)<br>)<br>) |

## **MEMORANDUM OPINION**

### I.  INTRODUCTION

Before this Court is plaintiff Sentry Select Insurance Company's Motion for Summary Judgment [ECF No. 8], filed on November 21, 2015, defendant Circle Bar A, Inc.'s Response [ECF No. 10], filed December 7, 2015, defendants Drought Transportation, LLC and Craig Goeckeritz's Response [ECF No. 11], filed December 11, 2015, plaintiff's Replies [ECF No. 13 and 16], filed December 12, 2015 and December 24, 2015, respectively. Having considered the motion, the responses and replies, as well as the applicable law, the Court grants the Motion for Summary Judgment.

### II.  BACKGROUND

This is a declaratory action filed by Sentry Select Insurance Company, which is seeking a holding from this Court that it has no duty to defend or indemnify defendants Goeckeritz, Drought, and Circle Bar in an underlying lawsuit filed by Adrian Martinez.

In the underlying suit, Martinez claims that he was involved in an auto accident with Goeckeritz. Pl.'s Appx. [ECF No. 9] Ex. C pp. 68-74. The facts section as alleged in the complaint is repeated here in its entirety:

1

>  4.0     On or about September 26, 2014, Plaintiff was lawfully driving in a 2012 Dodge Ram, traveling east bound on FM 133 in Catarina, Dimmit County, Texas. At the time in question, Defendant CRAIG REID GOECKERITZ, was driving a 2004 Freightliner Tractor Trailer in the same direction. As Plaintiff was making a left turn onto a private drive, Defendant, changed lanes into oncoming traffic, striking Plaintiff's vehicle.
>  4.1     At such time, Defendant CRAIG REID GOECKERITZ was working in the course and scope of his employment with CIRCLE BAR A, INC. and/or DROUGHT TRANSPORTATION, LLC.

*Id.* at 69. Martinez seeks recovery against Goeckeritz for negligence in causing the accident, and against both Drought Transportation and Circle Bar for negligent entrustment of the Freightliner when they "knew or should have known that [Goeckeritz] was not a safe driver." *Id.* at 70-71. Further, Martinez seeks to recover from Drought Transportation and Circle Bar under a theory of respondeat superior "due to the master-servant relationship which existed." *Id.*

Prior to the accident, Sentry Select issued a business auto policy to Drought Transportation—No. CT788142002. Pl.'s Appx. Ex. B pp. 5-66. The policy states that Sentry Select has a "right and duty to defend any 'insured' against a 'suit' asking for [bodily injury or property] damages . . . [h]owever, we have no duty to defend any 'insured' against a 'suit' seeking damages . . . to which this insurance does not apply." *Id.* at 29.

In a section titled "Who Is An Insured," the policy states that Drought Transportation is insured for any "covered auto," as well as "anyone else while using with [Drought's] permission a covered 'auto' [Drought] own[s], hire[s] or borrow[s]." *Id.* The policy lists the covered autos in a "Schedule of Vehicles" that includes the 2004 Freightliner tractor trailer. *Id.* at 16, 20-27. However, the policy includes a business-use exclusion:

>  Liability Coverage, Uninsured Motorist Coverage, Underinsured Motorist Coverage, Personal Injury Protection Coverage, Property Protection Insurance Coverage or any other Liability Coverage provided by this policy, for a covered "auto" described in this policy, is changed as follows:
>
>  1. The following exclusions are added:

> This insurance does not apply to:
>
> a.  A covered "auto" while used to carry property in any business.
>
> b.  A covered "auto" while used in the business of anyone to whom the "auto" is rented, leased or loaned.
>
> 2.  Who Is An Insured does not include anyone engaged in the business of transporting property by "auto" for hire who is liable for your conduct.

*Id.* at 59.

Sentry Select seeks a declaratory judgment that it has no duty to defend or indemnify defendants because the accident occurred while Goeckerlitz was conducting business for Circle Bar. Pl.s Mot. 1-2. Sentry Select urges this Court to consider testimony from Goeckeritz and Drought's Fleet manager that, at the time of the accident, the Frieghtliner had been rented or leased to Circle Bar, and that the truck was being used to pick-up and deliver sand for Circle Bar's fracturing operations. Pl.'s Mot. 5-6. Defendants argue that the facts raised in the pleadings trigger the duty to defend, and that extrinsic evidence—such as the testimony from Goeckeritz or Drought's Fleet Manager—should not be considered.

### III.  LEGAL STANDARDS

A court must grant summary judgment pursuant to Rule 56 if the movant shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). An insurer's duty to defend is a question of law. *Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 471-72 (5th Cir. 2009).

Under Texas law, the duty to defend is governed by the "eight-corners rule," which requires a court to look only to the terms of the policy and the pleadings of a third-party claimant when determining whether an insurer has a duty to defend. *GuideOne Elite Ins. Co. v. Fielder Road*

*Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006). Thus, the duty to defend is determined without regard for the veracity or merits of the third-party's claims. *Id.* at 308. "If the underlying pleading alleges facts that may fall within the scope of coverage, the insurer has a duty to defend; if, on the other hand, the pleading only alleges facts excluded by the policy, there is no duty to defend. *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004).

The Texas Supreme Court has suggested, and the Fifth Circuit has recognized, a narrow exception to the eight-corners rule. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir. 2004) ("[W]e conclude any exception would only apply in very limited circumstances: when it is initially impossible to discern whether coverage is potentially implicated and when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case."); *GuideOne*, 197 S.W.3d at 308 (citing *Northfield* with approval); *Ooida Risk Retention Group, Inc. v. Williams*, 579 F.3d 469, 475-76 (5th Cir. 2009) ("We find that *GuideOne* supports our '*Erie* guess' that the limited conditions of an exception to the eight corners rule exists here."). Courts may consider extrinsic evidence when 1) it is initially impossible to discern whether coverage is potentially implicated, and 2) when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case. *Id.* Extrinsic evidence is more likely to be considered when an explicit exclusion clause is at issue and the facts necessary to resolve the question are not contained in the pleadings. *See Ooida*, 579 F.3d at 476 (considering extrinsic evidence to determine whether a driver was an "employee" in the context of a fellow-employee exclusion "fit comfortably" within the narrow exception because the facts were readily ascertainable, relevant to coverage, and did not contradict allegations in the pleadings).

4

### IV. ANALYSIS
#### a. The issue is ripe for this Court to decide.

"When, as here, jurisdiction is based on diversity, we apply the forum state's substantive law." *Bayle v. Allstate Ins. Co.,* 615 F.3d 350,355 (5th Cir. 2010). As the parties agree, Texas law applies and this Court must apply Texas law regarding the duty to defend and indemnify. At the outset, this Court finds that the duty to defend and indemnify here is ripe and justiciable. Under Texas law, questions of the duty to defend or indemnify are justiciable "when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.*" *Farmers Texas County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 8 (Tex. 1997) (emphasis in original); *see also Star-Tex Res., L.L.C. v. Granite State Ins. Co.,* 553 Fed. Appx. 366, 373 (5th Cir. 2014). Here, if the facts trigger the business-use exclusion, there is no coverage under the policy. Because the business-use exclusion would negate any coverage, including the duty to defend or indemnify, the issue is ripe.

#### b. The Fifth Circuit has recognized a narrow exception to the eight-corners rule.

In assessing the duty to defend or indemnify, Texas law applies the eight-corners rule. Thus, this Court is hesitant to look outside the pleadings and insurance policy to determine whether Sentry Select had a duty to defend and indemnify here. Indeed, the Texas Supreme Court has not expressly recognized an exception to the eight-corners rule, and has not directly addressed the Fifth Circuit's Erie guess made in *Ooida*. Nevertheless, the Fifth Circuit has clearly recognized the exception, and the parties here have discussed them in depth. The parties have not pointed to—and this Court has not found—new Texas Supreme Court cases that allow this Court to depart from the Fifth Circuit's *Erie* guess in *Ooida. See Star-Tex Resources, L.L.C. v. Granite State Ins. Co.,* 553 Fed. Appx. 366, 371 n. 4 (5th Cir. 2014) (noting that *Ooida* is binding "[a]bsent a change in law announced by the Texas Supreme Court"). Thus, the Fifth Circuit's guess is binding, and

5

this Court may consider Sentry Select's extrinsic evidence if 1) it is initially impossible to discern whether coverage is potentially implicated by Martinez's complaint, and 2) Sentry Select's evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged by Martinez.

### i. It is initially impossible to discern whether the coverage here is potentially implicated by Martinez's complaint.

Under Texas law, "[i]nsurance policies are contracts, and their constructions are governed by ordinary contract principles." *Gomez v. Hartford Company of the Midwest*, 803 S.W.2d 438, 441 (Tex.App.1991) (citation omitted). Here, the policy explicitly excludes coverage for autos "used in the business of anyone to whom the auto is rented, leased or loaned. Pl.'s Appx. Ex. B at 59. The Fifth Circuit has held that the business-use exclusion here is unambiguous and "clearly refers to occasions when the truck is being used to further the commercial interests of the lessee." *Empire Fire and Marine Ins. Co. v. Brantley Trucking, Inc.*, 220 F.3d 679 (5th Cir. 2000). Thus, coverage under the policy here hinges on how the 2004 Freightliner was being used when the accident occurred—*i.e.* whether the truck was furthering the commercial interests of a lessee. Evidence of how a vehicle was being used at the time of an accident is "critical to the question of coverage" under a policy with explicit exclusions. *Western Heritage Ins. Co. v. River Entertainment*, 998 F.2d 311, 315 (5th Cir. 1993) (considering extrinsic evidence when it was impossible to determine the basis of a defendant's impairment when causing a car accident, when the policy included a liquor liability exclusion); *see also State Farm Fire & Cas. Co. v. Wade*, 827 S.W.2d 448 (Tex. App.—Corpus Christi 1992, writ denied) (considering extrinsic evidence when it was impossible to tell whether a boat was being used in a commercial activity, which was excluded from coverage).

As recited above, the complaint contains only a brief description of facts. Martinez claimed that Goeckeritz was driving a 2004 Freightliner and struck Martinez. He further alleged that at the

time, Goeckeritz "was working in the course and scope of his employment with CIRCLE BAR A, INC. and/or DROUGHT TRANSPORTATION, LLC." Pl.'s Appx. Ex. C at 69. Sentry Select argues that these facts are insufficient to determine if policy coverage is implicated, and that this Court should consider extrinsic evidence to determine if the duty to defend and indemnify is implicated here. Conversely, defendants argue that these factual allegations fall within the scope of coverage, and that this Court should deny the motion for summary judgment here. Circle Bar's Resp. at 2. Specifically, Circle Bar argues that the complaint implicates coverage because if Goeckeritz was working for Drought Transportation at the time of the accident, then it was *not* in the business of Circle Bar; Drought Transportation argues this Court should assume the existence of coverage because the complaint alleged an accident with a covered auto under the policy. *See* Circle Bar's Resp. at 8 ("Because the allegations in the Underlying Pleadings state that Goeckeritz was acting 'in the course and scope of his employment with Circle Bar **and/or** Drought' there exists the possibility that Goeckeritz was not using the covered auto 'in the business' of Circle Bar . . . ."); Defs. Drought and Goeckeritz Resp. [ECF No. 11] at 7 ("[C]overage is implicated, since Plaintiff alleges 'bodily injury' caused by an 'accident' resulting from use of a 'covered auto' against the 'insureds.'").

But, taken as true, the facts in the underlying petition here merely establish who employed Goeckeritz, and not whether the Freightliner was being used "to further the commercial interests of the lessee." *Empire Fire and Marine Ins. Co. v. Brantley Trucking, Inc.*, 220 F.3d 679 (5th Cir. 2000). In fact, the underlying petition never addresses whether the vehicle was leased or loaned in the first place. Even if Goeckeritz was employed by Drought Transportation and not Circle Bar, it is impossible to discern whether the Freightliner had been leased or loaned to Circle Bar, or whether it was being used to further the commercial interests of Circle Bar. As noted by Sentry

Select, it is common for trucking companies to provide their trucks and drivers to another company; in those scenarios, the driver would be working within the scope of employment with the lessor company while also furthering the commercial interests of the lessee. Pl.'s Reply at 2-3. Thus, whether Goeckeritz was acting within the scope of his employment for Circle Bar, Drought Transportation, or both, it is impossible to discern the fundamental fact concerning coverage: whether the Freightliner had been leased, and whether it was being used to further the interests of a lessee.

The Court recognizes that this first prong is usually satisfied only when underlying factual allegations are "so vague, brief, or unspecific that is impossible to determine whether the potential for coverage exists." Circle Bar's Resp. [ECF No. 10] 10 (citing *Star-Tex*, 553 Fed. Appx. at 372). However, the Court is unpersuaded by Circle Bar's claim that Martinez's petition included sufficient factual detail to determine whether a possibility of coverage existed. Defendants rely on a single sentence alleging that Goeckeritz was employed by Circle Bar and/or Drought Transportation at the time of the accident. But, read together with the policy exclusion, the petition does not raise enough facts suggesting coverage is implicated. The issue of who employed Goeckeritz is wholly separate from whether the truck had been leased, or whether it was used in another company's business.

Similarly, the Court is unpersuaded by Drought Transportation's argument that coverage is implicated because "[p]laintiff alleges a 'bodily injury' caused by an 'accident' resulting from the use of a 'covered auto' against the 'insureds.'" Drought's Resp. at 7. By quoting the policy's terms, Drought seems to suggest that the Court should simply assume that the facts alleged fall within those definitions. But it is the defendants who have made these conclusions, not Martinez. The words "accident," "covered auto," or "insured" do not appear in the underlying petition at all, and,

8

as noted above, whether the Freightliner was being used to further the commercial interests of a lessee was not addressed. Further, Drought seems to be suggesting that this Court should assume coverage exists, and ignore the exclusion as "an attempt to defeat coverage." Def.s Drought and Goeckeritz Resp. at 6. But the business-use exclusion is a part of the contract. It informs coverage just as much as the terms defining "covered auto" or "insured." Read together with the other parts of the contract, all of these terms have meaning and operate to define the scope of coverage. *See Admiral Ins. Co. v. Ford*, 607 F.3d 420, 423 (5th Cir. 2010). In a policy with a business-use exclusion, coverage depends as much on how a vehicle was being used as it does on whether the vehicle was a "covered auto" under the definitions of the policy. While the Court is cognizant that Texas law requires doubt to be resolved in the insured's favor—*Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)—it is impossible for this Court to discern whether coverage is potentially implicated because the facts do not address the specific policy exclusion. Instead, the facts merely state that Goeckeritz was working in the scope of his employment with one, or both, of the defendants. This Court refuses to read facts or allegations into the complaint in order to potentially implicate coverage.

In light of the business-use exclusion, it is impossible to discern whether coverage is potentially implicated because the underlying petition includes no allegations concerning whether the Freightliner was leased or used to further the commercial interests of a lessee. Thus, the first prong of the *Ooida* exception is satisfied.

### ii. The extrinsic evidence goes solely to a fundamental issue of coverage, and not to the truth or falsity of Martinez's allegations.

Second, this Court must consider whether the extrinsic evidence offered goes solely to the fundamental issue of coverage, and does not overlap with the merits of the underlying case. *Northfield*, 363 F.3d at 531. The evidence offered here is testimony from Goeckeritz and Drought's

Fleet Manager, Craig Esser, as well as a leasing agreement between Drought Transportation and Circle Bar. Pl.'s Appx. Ex. E pp. 79-101, Ex. F pp. 103-133. Goeckeritz testified that he drove the Freightliner to pick up and deliver "frac sand" for Circle Bar to use at their various fracturing operations. Pl.'s Appx. Ex. F 109. He further testified that on the day of the accident, he received a dispatch directly from Circle Bar and was on the way to pick up a load of sand when the accident occurred. *Id.* at 120-21. Esser testified that the truck Goeckeritz was driving at the time of the accident had been leased to Circle Bar. Pl.'s Appx. Ex. E at 86. He further testified that, pursuant to the leasing agreement, Circle Bar had direct contact with the drivers, and that Circle Bar paid Drought Transportation a certain percentage based on the loads. *Id.* at 87. The "Independent Contractor Lease Agreement" between Circle Bar and Drought Transportation outlined terms under which Drought would facilitate transportation of goods for Circle Bar, and identified the 2004 Freightliner as equipment bound under the agreement. *Id.* at 93-99. The agreement did not list any drivers, however.

Defendants argue that this extrinsic evidence overlaps with the merits of the underlying lawsuit because "whether the vehicle in question was rented or leased by Drought or Circle Bar A and/or whether Goeckeritz was utilizing the vehicle in the business of Circle Bar A are directly relevant to the allegations made by the Plaintiff." Circle Bar's Resp. at 12. Defendants argue that this could overlap with the merits of the allegations that Goeckeritz was working in the scope of his employment with Circle Bar and/or Drought, was negligently entrusted the vehicle, and was the agent and/or servant of Circle Bar and/or Drought. *Id.*; Drought and Goeckeritz Resp. at 8. This Court disagrees.

The evidence here goes to coverage because it directly addresses the business-use exclusion: it establishes that the Freightliner was leased to Circle Bar, and that, at the time of the accident,

Goeckeritz was using the Freightliner to haul frac sand for Circle Bar, to whom it was leased. Thus, the Freightliner was clearly furthering the commercial interests of a lessee. This evidence does not overlap with the merits of the underlying dispute because the mere fact that the Freightliner was leased to Circle Bar does not establish negligence or relate to any master/servant relationship between Goeckeritz and Drought and/or Circle Bar. As noted above, the issue of who employed Goeckeritz is wholly separate from whether the truck had been leased, or whether it was used in another companies business. The evidence establishes only that the truck was leased to Circle Bar, and that it was used in the business of Circle Bar. Conversely, the petition alleges only that Goeckeritz was employed by Circle Bar and/or Drought. Testimony that Goeckeritz was in contact with Circle Bar dispatch establishes that the truck was being used to further Circle Bar's commercial interests, but does not engage in the truth or falsity of claims that he was a servant of Drought, or Circle Bar, or both. Because this Court has found that the petition includes no allegations concerning how the Freightliner was used, extrinsic evidence going solely to whether the Freightliner was leased to and used in the business of Circle Bar cannot overlap with the merits of those allegations.

Similarly, the Court is unpersuaded by Drought's arguments. Drought argues that the evidence overlaps with the merits because the evidence suggests that Goeckeritz was under the dispatch of Circle Bar and the petition claims he was under the control of Drought. According to Drought, "[i]t has to be one or the other, since under federal regulations Goeckeritz would be the 'exclusive' agent of Circle Bar A while he is under dispatch of Circle Bar A." Drought and Goeckeritz Resp. at 8 (citing 49 C.F.R. § 376.12(c)). But the cited motor carrier regulations simply mandate certain terms be included in covered transportation lease agreements; it does not create or establish agency or exclusive control of either Circle Bar or Drought. *See* 49 C.F.R. § 376.12(c)(4) ("Nothing in the

11

provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee."). Those are specific fact questions that the evidence here does not implicate. More importantly, those questions are irrelevant to whether the business-use exclusion is implicated because the proper focus is on the Freightliner, not Goeckeritz. The evidence here establishes that the Freightliner was leased to Circle Bar, and that it was used to haul sand for Circle Bar. These facts do not overlap with the issue being decided here: coverage under the business-use exclusion. This Court makes no determination as to the employment status or vicarious liability of the defendants. But regardless of the truth or falsity of the allegations that Goeckeritz was working in the scope of employment with Circle Bar and/or Drought Transportation, the evidence here clearly triggers the business-use exclusion under the policy.

Because the extrinsic evidence does not overlap with the merits of the underlying petition, the second prong of the *Ooida* exception is satisfied. Thus, this Court will consider the extrinsic evidence, as well as the eight corners, to determine if Sentry Select owes a duty to defend or indemnify under the policy.

### c. This Court finds that the business-use exclusion clearly precludes coverage.

The record clearly establishes that the 2004 Freightliner was leased to Circle Bar. Further, Circle Bar dispatch instructed Goeckeritz to pick up and drop off frac sand for several days leading up to the accident with Martinez. At the time of the accident, Goeckeritz had been instructed by Circle Bar dispatch and was in route to pick up another load of frac sand for Circle Bar. This evidence is undisputed, and defendants have offered no evidence to counter these facts. Therefore, there is no genuine issue of material fact that, at the time of the accident, the 2004 Freightliner was being used to further the commercial interests of Circle Bar.

This Court finds that the 2004 Freightliner was being used in the business of a lessee, Circle Bar. Regardless of whether Goeckeritz was working in the scope of his employment with either or both parties, and regardless of whether either party is vicariously liable under respondeat superior, the business-use exclusion under the policy applies. Therefore, the policy issued by Sentry Select does not cover those claims, and as a matter of law, Sentry Select has no duty to defend or indemnify any of the defendants in connection with the underlying lawsuit styled *Adrian Martinez v. Craig Reid Goeckeritz, Circle Bar A, Inc. and Drought Transportation, LLC*, Cause No. 14-10-12401-DCVAJA, in the 365th Judicial District Court of Dimmit County, Texas.

## V.  CONCLUSION

In sum, the determination of whether the Freightliner had been leased, and how it was being used at the time of the accident requires consideration of evidence outside the eight corners of the complaint and the policy. Further, as in *Ooida*, these facts are readily ascertainable, relevant to coverage, and do not engage the truth or falsity of the allegations of the underlying complaint. Despite defendants' arguments to the contrary, the consideration of extrinsic evidence as to whether the Freightliner had been leased to another business does not contradict these allegations. This Court, considering the extrinsic evidence in addition to the eight corners, finds that the business-use exclusion applies and bars coverage under the policy. Sentry Select has no duty to defend or indemnify defendants here, and is entitled to judgment as a matter of law.

A separate order shall issue.

Royce C. Lamberth
United States District Judge

DATE: 10/24/16

Case 5:15-cv-00890-RCL   Document 22   Filed 10/24/16   Page 14 of 14